40038. HAYES v. HOWELL et al.

HILL, Chief Justice.
The Howells bring this action against Hayes for declaratory judgment under OCGA § 44-5-168 (Code Ann. § 85-407.1), claiming ownership by adverse possession of certain mineral and oil rights. The trial court granted the Howells' motion for summary judgment. On appeal, Hayes challenges the constitutionality of OCGA § 44-5-168 (Code Ann. § 85-407.1), first enacted in 1975. Ga. L. 1975, p. 725.

On January 2, 1957, James A. Hayes, Jr., deeded three tracts of land to W. Harvey Howell "reserving and excepting unto the said James A. Hayes the undivided one-half of all minerals and oil rights in and to the three tracts of land hereinabove described and conveyed."

On December 21, 1966, W. Harvey Howell deeded to two other Howells the three tracts of land (minus eleven acres reserved for himself) with the following provision: "There is reserved and excepted from this conveyance the undivided one-half of all minerals and oil rights in and to the three tracts of land hereinabove described and conveyed, which were excepted by James A. Hayes in his deed to W. Harvey Howell. . . ." The Howells will be referred to herein as the landowners and Hayes will be referred to as the mineral owner.

The parties agree that the mineral rights have never been taxed apart from the land, and that the mineral owner has never paid taxes on his mineral rights. For the past twenty-five years, the landowners have paid all taxes, and the mineral owner has made no attempt to

exploit the mineral rights.

The landowners rely upon OCGA § 44-5-168 (Code Ann. § 85-407.1) which provides in part: ". . . whenever real property is conveyed in fee simple but the mineral rights to such property are reserved by the grantor, the owner of the real property in fee simple . . . may gain title to such mineral rights by adverse possession if the owner of the mineral rights . . . [has] neither worked nor attempted to work the mineral rights nor paid any taxes on them for a period of seven years since the date of the conveyance. . . ." OCGA § 44-5-168(b)(1) (Code Ann. § 85-407.1) provides that the petition shall be brought in the county where the land is located.

The mineral owner alleges that OCGA § 44-5-168 (Code Ann. § 85-407.1) is contrary to the venue requirements of the Constitution of Georgia and is unconstitutional as a retroactive law and an impairment of the obligation of contract. He further contends that the landowners' payment of taxes inures to his benefit as co-tenant of the mineral interests.

1. The mineral owner argues that venue was improper in Bartow County, the county in which the land lies (1983 Ga. Const., Art. VI, Sec. II, Par. II (Code Ann. § 2-2802)), and that suit should have been brought in Fulton County, where he resides (1983 Ga. Const., Art. VI, Sec. II, Par. III (Code Ann. § 2-2803)).[1] In so arguing, he relies on the emphasized language from *White v. Gordon,* 213 Ga. 730, 731 (101 SE2d 759) (1958): *"Our law makes a distinction between suits to establish the title to land or to establish the evidence of title, and suits to recover the land upon legal title, the former being suits in equity and the latter actions at law.* The above-quoted constitutional provision [providing that cases respecting title to land shall be tried in the county where the land lies] concerns actions at law, such as ejectment and statutory substitutes, in which the plaintiff asserts a presently enforceable legal title against the possession of the defendant, for the recovery of land or recovery of the land and mesne profits. *Owenby v. Stancil,* 190 Ga. 50, 55 (8 SE2d 7) [1950]. 'One test as to whether a suit to recover land is one of ejectment simply, and is a case "respecting title to land," is whether the plaintiff can recover on his title alone, or whether he must ask the aid of a court of equity in order to recover.' *Frazier v. Broyles,* 145 Ga. 642, 646 (89 SE 743) [1916]." (Emphasis supplied.)

---

[1] 1983 Ga. Constitution, Art. VI, Sec. II, Par. II (Code Ann. § 2-2802) provides: "Cases respecting title to land shall be tried in the county where the land lies. . . ." 1983 Ga. Const., Art. VI, Sec. II, Par. III (Code Ann. § 2-2803) states: "Equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed."

The mineral owner contends that since the landowners' case depends, not on the strength of their own title, but upon proof of his failure to work his mineral rights or to pay taxes on them for seven years, in order to acquire ("gain," "obtain") title under the statute, the suit is one in equity "to establish the title to the land or to establish evidence of title" and should have been filed in Fulton County. We disagree.

The landowners' suit is clearly not in equity as they seek to establish legal title by adverse possession as a matter of law in reliance on the statute. In this substantive decision, no equity is involved. No deed to the mineral owner is to be cancelled. The landowners seek to recover an interest in land by asserting a presently enforceable legal title against the defendant's mineral interest claim. Therefore, under the *White v. Gordon,* supra, rule, as a case at law, venue is constitutionally in the county in which the land lies as provided in OCGA § 44-5-168 (b) (1) (Code Ann. § 85-407.1).

This result is not changed by the fact that this suit was brought as a declaratory judgment action. In *Shaw v. Crawford,* 207 Ga. 67 (60 SE2d 143) (1950), a declaratory judgment action involving competing chains of title for the same property, we held that where the primary and fundamental issue is legal in character, i.e., that of title to land, the venue of the case is still in the county where the land lies even though the suit is for declaratory judgment and an incidental injunction may issue to preserve the status quo. Compare *Vizard v. Moody,* 115 Ga. 491 (1) (41 SE 997) (1902), predating the Declaratory Judgment Act.

The trial court did not err in failing to dismiss the case on the ground of improper venue.

2. In 1957, when the mineral owner created his undivided one-half interest in the mineral rights by reservation, the law was that such mineral rights could not be lost by mere non-user. In *Brooke v. Dellinger,* 193 Ga. 66, 73 (17 SE2d 178) (1941), it was held that mineral rights conveyed in fee simple could not be lost by adverse possession absent adverse use of the minerals themselves.

By enacting OCGA § 44-5-168 (Code Ann. § 85-407.1), the General Assembly attempted to abrogate the *Brooke* rule by providing that either non-user or failure to pay taxes on the mineral rights could result in a forfeiture after seven years if an appropriate action is brought by the owner of the remaining fee after that time. This statute was ameliorated by our holding in *Nelson v. Bloodworth,* 238 Ga. 264 (232 SE2d 547) (1977), that suit cannot be brought under the 1975 act until seven years after its effective date (July 1, 1975). Accord, *Johnson v. Bodkin,* 241 Ga. 336 (247 SE2d 764) (1978). See *Stith v. Morris,* 241 Ga. 247 (1) (244 SE2d 817) (1978); *U. S. Fidelity*

*&c. Co. v. Toombs County,* 187 Ga. 544 (4) (1 SE2d 411) (1939).

Here, the seven years have passed since enactment of the 1975 law (now OCGA § 44-5-168 (Code Ann. § 85-407.1)). But, because the rights were retained by the mineral owner prior to 1975, he contends that application of the act would violate the state constitutional prohibition against impairment of the obligation of contracts and passage of retrospective laws. "No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed." 1983 Ga. Const., Art. I, Sec. I, Par. X (Code Ann. § 2-110).

a. In Texaco, Inc. v. Short, 454 U. S. 516 (102 SC 781, 70 LE2d 738) (1982), the United States Supreme Court recently addressed an impairment of contracts claim under the federal constitution regarding Indiana's Dormant Mineral Interest Act.[2] Under Indiana's law, a severed mineral interest not "used" for 20 years automatically lapses and reverts to the surface owner unless a claim is filed with the county recorder's office prior to the end of the 20-year period (or a two-year grace period after the effective date of the statute). "Uses" include mining attempts, payment of rents or royalties, and payment of taxes. After recognizing the power of a state to define property rights and to condition the retention of those rights upon reasonable requirements,[3] the Supreme Court held that since "a mineral owner may safeguard any contractual obligations or rights by filing a statement of claim in the county recorder's office [, s]uch a minimal 'burden' on contractual obligations is not beyond the scope of permissible state action." Id. at p. 531.

The same is true here. The preservation of the mineral owner's claim under OCGA § 44-5-168 (Code Ann. § 85-407.1) depended only upon his use of the minerals *or* upon returning them for taxes. We find that, as under the federal constitutional provision, the minimal burden imposed by this statute of either using the minerals or

---

[2] Art. I, Sec. X of the United States Constitution (Code Ann. § 1-134) provides: "No State shall . . . pass any Bill of Attainder, ex post facto law, or *law impairing the Obligation of Contracts,* or grant any Title of Nobility." (Emphasis supplied.) The phrase 'ex post facto" applies to criminal, not civil, cases. Calder v. Bull, 3 Dall. (3 U. S.) 386, 390 (1798); Bankers Trust Co. v. Blodgett, 260 U. S. 647, 652 (43 SC 233, 67 LE 439) (1922); *Boston v. Cummins,* 16 Ga. 102 (2) (1854).

[3] In so holding, the Court relied inter alia on Jackson v. Lamphire, 3 Pet. (28 U. S.) 280 (1830), where it upheld a recording statute as applied retroactively to a senior deed not required to be recorded when delivered, in favor of a junior deed that had been recorded.

returning them for taxes does not impair the contractual obligations involved as prohibited by the comparable provision of our state constitution. The mineral owner's contractual rights are not unconstitutionally impaired by the addition of minimal conditions imposed by the state for retaining those interests. As long as the conditions are met, the rights are the same; failure to comply with the regulatory conditions results in loss of the rights.[4] The trial court did not err in overruling the mineral owner's objection to granting summary judgment on this basis.

b. Unlike the federal constitution, our state constitution protects not only against the impairment of contracts, but also against retroactive (or retrospective) laws. This provision prohibits the impairment of vested rights. "To be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent. A divestible right is never, in a strict sense, a vested right." *Merchants Bank v. Garrard,* 158 Ga. 867, 871 (124 SE 715) (1924). It has also been said that: "[t]he term 'vested rights,' which cannot be interfered with by retrospective laws, means interests which it is proper for [the] state to recognize and protect and of which [the] individual cannot be deprived arbitrarily without injustice." American States Water Service Co. of California v. Johnson, 88 P2d 770, 774 (Cal. 1939). Accord, Keller v. Wilson & Co., 190 A 115, 122 (Del. 1936); Board of Commrs. of Everglades Drainage Dist. v. Forbes Pioneer Boat Line, 86 S 199, 202 (Fla. 1920); Rookledge v. Garwood, 65 NW2d 785, 791 (Mich. 1954); Application of Filippini, 202 P2d 535, 537 (Nev. 1949); Troy Hills Village, Inc. v. Fischler, 301 A2d 177, 181 (N. J. 1971).

Mineral rights are valuable property interests recognized and protected in this state. *Brooke v. Dellinger,* supra, 193 Ga. 66. As such, owners of mineral interests may be said to have "vested rights" in this property. The mineral owner therefore claims a "vested right" to retain his mineral interests against a claim of adverse possession under the state of the law at the time of his contract as held in *Brooke v. Dellinger,* supra, and that to apply the statute to his rights is a retrospective law in contravention of his state constitutional rights.

It is clear, however, that property is held subject to the proper exercise of the police power by legislative bodies. "The general rule throughout the United States is that a State legislature may

---

[4] It could be urged that the landowners owe no contractual obligations to the mineral owner, and that the mineral owner's rights are property rights, not contractual ones. In view of the foregoing discussion, we need not pursue this matter.

constitutionally repeal, alter, or modify State laws enacted under the police power for the protection of the public, without violating any express or implied constitutional prohibition against retroactive statutes." *Bullard v. Holman,* 184 Ga. 788, 792 (193 SE 586) (1937). For example, in *Morgan v. Thomas,* 207 Ga. 660 (3) (63 SE2d 659) (1951), this court held that when the Fulton County Board of Commissioners changed the zoning in an area which included the appellant's land, no vested right in the zoning was abridged.

Furthermore as we stated in *Pope v. City of Atlanta,* 242 Ga. 331, 333-34 (249 SE2d 16) (1978), upholding the constitutionality of the Metropolitan River Protection Act, "[t]he inherent police power of the state extends to the protection of lives, health and property of the citizen, and to the preservation of good order and public morals and is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of public interest. *McCoy v. Sanders,* 113 Ga. App. 565 (148 SE2d 902) (1966). Further, in the area of environmental legislation, the state Constitution specifically authorizes the General Assembly *'to provide [by law for: (1)] restrictions upon land use in order to protect and preserve the natural resources,* environment and vital areas of this state.' " (Emphasis supplied.) 1983 Ga. Const., Art. III, Sec. VI, Par. II (a) (1) (Code Ann. § 2-1102). Other examples of burdens which may be imposed upon property rights under the police power are health regulations, *Vinson v. Home Builders Assn.,* 233 Ga. 948, 949 (213 SE2d 890) (1975); building standards, *Reed v. White,* 207 Ga. 623, 625 (63 SE2d 597) (1951); and abatement of nuisances, *Davis v. Stark,* 198 Ga. 223, 230 (31 SE2d 592) (1944).

The Code section challenged here was also passed under the General Assembly's police power. It serves dual purposes: to encourage the use of the state's mineral resources and the collection of taxes, or to encourage the use of land free of interference by the holders of mineral rights who neither use nor pay taxes upon them. As such it is a reasonable exercise of the police power. By the same token, the statute itself does not divest the mineral owner of his rights; it conditions the retention of those rights upon the requirements of either using them or paying taxes upon them for the public benefit. The twenty-year security deed forfeiture provision found unconstitutional in *Todd v. Morgan,* 215 Ga. 220 (109 SE2d 803) (1959), did not permit the deed holder to preserve his title by such minimal conditions (e.g., recorded demand for payment within the twenty years). We conclude, therefore, that the 1975 Act is constitutionally valid as applied to this pre-1975 deed. Accordingly, the trial court did not err in granting summary judgment to the landowners.

3. In enumeration of error 3, the mineral owner argues that under the facts of this case the landowners, as tenants in common of the mineral interests, have paid the taxes due from the mineral owner, and hence the taxes on the mineral interests have been paid. See *Bank of Tupelo v. Collier,* 191 Ga. 852, 857 (14 SE2d 59) (1941). The mineral owner relies on the fiduciary relationship between tenants in common. *Fuller v. McBurrows,* 229 Ga. 422, 425 (192 SE2d 144) (1972).

However, the mineral owner and the landowners here are not tenants in common in the usual sense because the landowners also own the fee subject to the rights of the mineral owner in one-half of the mineral interests.[5] The payment of taxes by the landowners was made in their capacity as landowners, not as tenants in common of the mineral rights. As we read OCGA § 44-5-168 (Code Ann. § 85-407.1), it contemplates payment of taxes upon the mineral rights, as such, by the holder of the mineral rights who is not the owner of real property in fee simple. Having failed to make such payments, the mineral owner is not entitled to claim the benefit of tax payments made by the landowners.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., who concurs in the judgment only.*

DECIDED OCTOBER 26, 1983.

*Hatcher, Irvin & Pressley, Henry M. Hatcher, Jr.,* for appellant.
*Archer & Elsey, Shepherd L. Howell,* for appellees.

---

[5] It is for this reason that OCGA § 44-6-123 (Code Ann. § 85-1005) is not applicable here.