**Claude PARKER and Willie Irene Parker, Plaintiffs,**

v.

**REYNOLDS METALS COMPANY, Defendant.**

**Civ. A. No. 88–328–1–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

Oct. 17, 1990.

John W. Chambers, Sr., Timothy D. Chambers, Chambers, Chambers & Chambers, Atlanta, Ga., for plaintiffs.

Richard A. Schneider, Sean R. Smith, King & Spalding, Atlanta, Ga., for defendant.

FITZPATRICK, District Judge.

This is a diversity case filed to determine who owns the mineral rights to 249 acres of land owned by Claude and Willie Irene Parker in Wilkinson County, Georgia. In 1965, Claude Parker leased the mineral rights to Reynolds Mining Corporation and now seeks to regain them through adverse possession as permitted by O.C.G.A. § 44-5-168.

Both parties have filed motions for summary judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, a party moving for summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The facts in this case are not disputed; the entire matter turns on the court's interpretation of the contract and statute at issue.

## ANALYSIS

In 1965, Claude Parker signed a mining lease agreement to transfer the mineral rights to 249 acres of land to Reynolds Mining Company, today succeeded in interest by Reynolds Metals Company. The part of the lease pertinent to this case is clause (7), which divides the agreement into two parts as follows:

> Reynolds shall have and hold the Leased Land for the purposes set forth in this Mining Lease Agreement for a term of fifty (50) years from and after the date first above written and for such longer time after such term has ended as Said Minerals are produced from the Leased Land by Reynolds; provided, however, that a temporary cessation of production due to unavoidable casualty, causes beyond the control of Reynolds, or ordinary and usual shutdowns for repairs and development of mines or excavations upon the leased land shall not operate to terminate this Mining Lease Agreement....

Since the agreement was made, Reynolds has neither mined nor paid taxes on the land or the minerals in it. The plaintiffs filed their action on October 19, 1988, claiming that title to the mineral rights had reverted to them through adverse possession. Both parties have since filed motions for summary judgment.

The dispositive issue in this case is whether the lease is covered by O.C.G.A. § 44-5-168, which would allow the plaintiffs to recover the land through adverse possession provided certain conditions are met, or falls under an exception to that statute, which would allow the defendant to keep its lease. The statute reads in pertinent part:

**44-5-168. Presumption of adverse possession of mineral rights under certain conditions; procedure to obtain title on basis of adverse possession; applicability of this Code section to leases for term of years or to licensed mining operators.**

(a) Whenever mineral rights are conveyed or whenever real property is conveyed in fee simple but the mineral rights to such property are reserved by the grantor, the owner of the real property in fee simple or his heirs or assigns may gain title to such mineral rights by adverse possession if the owner of the mineral rights or his heirs or assigns

have neither worked nor attempted to work the mineral rights nor paid any taxes due on them for a period of seven years since the date of the conveyance and for seven years immediately preceding the filing of the petition provided for in subsection (b) of this Code section.

. . . . .

(f) Nothing in this Code section shall apply to a lease for a specific number of years nor to an owner of mineral rights who has leased the mineral rights in writing to a licensed mining operator as defined in Part 3 of Article 2 of Chapter 4 of Title 12.

O.C.G.A. § 44–5–168 (Supp.1990).

■ This statute takes a different approach from traditional adverse possession statutes and supersedes the common law rule, both of which require the adverse claimant to perform certain acts in order to establish title. *See*, O.C.G.A. § 44–5–161; *Brooke v. Dellinger*, 193 Ga. 66, 17 S.E.2d 178 (1941). Section 44–5–168 is a "lapse" statute which focuses instead on what the owner of the mineral rights has done or failed to do so as to preclude him from asserting or retaining title. A surface owner need not assert any acts of dominion over the surface estate or the minerals below it, but is only required to allege that he has a deed to the property, the mineral rights have been severed from the fee simple estate, and the requirements of nonuse and nonpayment of taxes for a seven year period by the owner of the mineral rights under subsection (a) have been established. O.C.G.A. § 44–5–168(b); *Mixon v. One Newco, Inc.*, 863 F.2d 846, 848–49 (11th Cir.1989).

This statute has two purposes: "to encourage the use of the state's mineral resources and the collection of taxes, or to encourage the use of land free of interference by the holders of mineral rights who neither use nor pay taxes upon them." *Hayes v. Howell*, 251 Ga. 580, 308 S.E.2d 170, 176 (1983). In other words, the statute is designed to ensure that mineral rights are either used or forfeited. *Mixon*, 863 F.2d at 850.

As is to be expected, the parties are at odds concerning the interpretation of the lease and the statute. The plaintiffs claim that the lease allows the defendant to hold its interest indefinitely, and that certain events, either during the first fifty years or thereafter, would not operate to terminate the lease. This, the plaintiffs reason, would subject the lease to O.C.G.A. § 44–5–168(a), since it either would not be a lease for specific number of years as excepted from the scope of the statute by subsection (f) or would violate the rule against perpetuities, making it void entirely. Also, the plaintiffs claim that the agreement is too vague, indefinite and uncertain to be enforced.

The defendant, by contrast, reads the lease as allowing it to hold its interest for fifty years, and then to continue indefinitely any mining started during the fifty year period. This qualifies as a lease for a specific number of years, the defendant believes, because it is allowed to commence mining only within a specified term of years. The provision allowing it to continue mining is merely a "finishing" clause, which requires it to continue mining begun during the fifty year period for the lease to remain in effect.[1]

■ After a careful reading of the lease, the court believes that the language quoted above gives the defendant a leasehold interest in the mineral rights for fifty years, which can then continue for the duration of any mining activities that begin during the initial fifty year period. If no mining is started during the fifty year period, then the lease will terminate at the conclusion of that time. If mining is started during the fifty year term, the lease will continue beyond that term for so long as the mining continues, but will cease once those activities stop, although mere interruptions in mining caused by casualties, causes beyond the control of Reynolds or temporary shut-

---

1. The defendant also contends that the plaintiffs' claims have been barred by waiver and other related doctrines, but the court need not rule on these issues in light of its ultimate decision.

downs for repairs or development will not end the lease. The lease could therefore continue indefinitely and in that case O.C. G.A. § 44–5–168 would never apply, since it requires a seven year period of inactivity.[2] If mining were to stop after the fifty year limit for any reason, except those listed in the lease, the mineral rights would revert back to the plaintiff automatically without the action of this or any other statute. The agreement thus creates a lease to mine for a fifty year period and gives the defendant an option[3] to continue that must be exercised by mining within that period, and if this is done the lease will last indefinitely. Clearly, this agreement is not too vague to be enforced. Based on this reading of the lease, the court will next decide whether the lease is one for a specific number of years as mentioned in O.C.G.A. § 44–5–168(f), since if this is so, there is no need to determine whether the lapse requirements of subsection (a) of that statute have been satisfied.

■ Under Georgia law, a lease for a mining interest can convey an estate for years out of the lessor's estate. *See,* O.C. G.A. § 44–6–102. "An estate for years is one which is limited in its duration to a period which is fixed or which may be made fixed and certain. Such an estate may be for any number of years, provided the limitation is within the rule against perpetuities." O.C.G.A. § 44–6–100(a).

After examining these rules, the court believes that this lease qualifies as one for a specific number of years. The initial period of the lease is given a specific ending date of fifty years after its inception. Although it is true that the lease will continue indefinitely if the option is exercised, the main point is that if the option is not used the lease has a life of fifty years. The first part of the agreement thus creates a lease for a specific number of years,

since it provides a definite ending date for the initial period.

■ Turning from the specified fifty year period of the lease to its remainder, it is clear that after the initial period the lease can be extended indefinitely. Even so, this does not subject the lease to the operation of the statute and is not violative of the rule against perpetuities as the plaintiffs claim. Under Georgia law, a perpetual option violates the rule against perpetuities and is void. O.C.G.A. § 44–6–1; *Floyd v. Hoover,* 141 Ga.App. 588, 234 S.E.2d 89 (1977). A perpetual lease or a perpetual right to renew a lease, however, does not violate the rule. *St. Regis Paper Co. v. Brown,* 247 Ga. 361, 276 S.E.2d 24 (1981). Even an option to purchase within a perpetually renewable lease does not violate the rule. *Rose v. Chandler,* 247 Ga. 382, 279 S.E.2d 423 (Ga.1981).

The case of *Smith v. Aggregate Supply Co.,* 214 Ga. 20, 102 S.E.2d 539 (1958) illustrates how this distinction is applied. In that case the defendant conveyed the right to remove gravel and other minerals from her property which was later assigned to the plaintiff. The original agreement had no specific ending date, but stated that the holder of the mineral rights was to pay the defendant three hundred dollars a year if the royalties from the minerals did not equal that amount. After the defendant began allowing others to remove the minerals, the plaintiff sued for an injunction. The foremost issue was whether the agreement created an option to purchase the minerals for an indefinite period, which would have violated the rule against perpetuities, or a lease for an indefinite period, which would not have violated the rule. After examining the provisions and language of the agreement, the court upheld it as a perpetual lease, which was not void under the rule. 102 S.E.2d at 540–542.

---

**2.** Conceivably, the statute could apply if the defendant were to continue mining after the fifty year period but fail to pay taxes for seven years, assuming it were to owe any.

**3.** The word "option" is not used in the lease or in the pleadings, except where the plaintiffs

claim that the lease creates an invalid option to purchase in perpetuity, Memorandum in Support of Plaintiffs' Motion for Summary Judgment, pp. 40–56, but the court feels that it is the term most descriptive of the lease and helpful for analysis.

This case has facts similar to those in *Smith,* and the application of Georgia law to the present facts yields a similar result. In the case at bar it is the *option* which must be exercised within a specified period; if this is done it is the *lease* which will then continue for an undetermined time, not the option. If the defendant starts to mine within the initial fifty year period of the lease, it will be exercising its option to extend the lease perpetually so long as it continues its mining activities. The part of this agreement extending beyond the fifty year period in the lease is in fact a continuation of that same lease, not the option to extend the lease, and does not violate the rule against perpetuities.

The court notes that this interpretation of the lease is in harmony with the legislative purposes behind O.C.G.A. § 44–5–168 as explained by *Hayes,* 251 Ga. 580, 308 S.E.2d 170, and *Mixon,* 863 F.2d 846.[4] The lease gives the defendant fifty years to either use or forfeit its mining rights and so encourages mining and discourages dormancy. If the option is exercised, the statute will never apply, but its purposes will still be served by the lease since if mining stops the mineral rights will automatically revert to the plaintiff.

To restate the court's analysis, the plaintiffs and defendant agreed in 1965 to a lease of mineral rights for an initial fifty year period, which can be extended indefinitely if the defendant starts mining within that time and then operates continuously. Since the initial ending period has a specific ending date, this qualifies the lease as one for a specific number of years as mentioned in O.C.G.A. § 44–5–168(f) and thus excepts it from the forfeiture provisions of that statute. If the defendant exercises this option and continues its activities beyond the initial period of the lease, it must keep mining for the lease to remain in force, which means that the seven year period of inactivity required for O.C.G.A. § 44–5–168 to operate cannot occur after the initial term of the lease. If the defendant stops mining after the first fifty years of the lease for any reason, with a few specified exceptions, the mineral rights will automatically revert to the plaintiff without the operation of any statute. Although the lease can be extended indefinitely, this does not violate Georgia law, and in fact both parts of the parties' agreement uphold the purposes behind O.C.G.A. § 44–5–168.

After a careful examination of the facts, the lease and the law in this case, the court can only conclude that the plaintiffs' motion for summary judgment should be DENIED and the defendant's GRANTED.

SO ORDERED.

---

**4.** In a letter dated October 10, 1990, the plaintiff claims that the purpose behind the statute is to prevent dormancy and remove encumbrances to titles so that land can be put to productive use. In support of this interpretation, the plaintiff cites *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), in which the Supreme Court quoted the Indiana Supreme Court's interpretation of that state's statute allowing for the lapse of mineral rights as being to remove uncertainties to titles. 454 U.S. at 523, 102 S.Ct. at 789. The statute in question in this case, however, is from Georgia, and the cases are clear as to its purpose, which is given as the encouragement of mining and taxpaying. *Hayes,* 251 Ga. 580, 308 S.E.2d 170, 176 (1983).