*Patsy Y. Porter, Sarah E. Lockwood*, for Office of Bar Admissions.

S09A1490. KNOX et al. v. WILSON et al.
(689 SE2d 829)

HINES, Justice.

This appeal concerns a tract of land held by the heirs of Emma Thomson; that tract has been subject to a one-half interest in the mineral rights in the land, now claimed by the heirs of L. G. Hardman, Jr. The Thomson heirs sought to extinguish the outstanding mineral interest under OCGA § 44-5-168,[1] and the Hardman heirs appeal from the trial court's order on summary judgment extinguishing the one-half mineral interest.

---

[1] OCGA § 44-5-168 reads:

(a) Whenever mineral rights are conveyed or whenever real property is conveyed in fee simple but the mineral rights to such property are reserved by the grantor, the owner of the real property in fee simple or his heirs or assigns may gain title to such mineral rights by adverse possession if the owner of the mineral rights or his heirs or assigns have neither worked nor attempted to work the mineral rights nor paid any taxes due on them for a period of seven years since the date of the conveyance and for seven years immediately preceding the filing of the petition provided for in subsection (b) of this Code section.

(b) In order to obtain absolute title to mineral rights in the circumstances described in subsection (a) of this Code section:

(1) The owner of the real property in fee simple or his heirs or assigns may file in the superior court for the county where the land is located a petition requesting relief in the nature of declaratory judgment. The petition:

(A) Shall contain all essential, required paragraphs, including jurisdiction;

(B) Shall contain the name and last known address of the grantor of the property reserving the mineral rights and the names and last known addresses of his heirs or assigns or any other person known by the plaintiff to have an interest in the mineral rights;

(C) Shall show:

(i) That the plaintiff or his predecessors in title were granted and obtained a deed for the property in question;

(ii) That the conveyance reserved mineral rights or that the plaintiff or his predecessors in title conveyed the mineral rights and reserved or retained the fee simple title to the real property; and

(iii) That, for a period of seven years preceding the filing of the petition after the conveyance, the owner of the mineral rights or his heirs or assigns have neither worked nor attempted to work the mineral rights nor paid taxes on them; and

In 1922, the tract of land at issue was conveyed to L. G. Hardman, Sr., with the grantor reserving a one-half interest in the mineral rights. In 1939, Hardman's son, L. G. Hardman, Jr., secured for himself the outstanding one-half mineral interest that had been reserved in 1922. In 1970, the Superior Court of White County construed various deeds and partitioned various real property held by members of the Hardman family, declaring, inter alia, that the tract at issue was the fee simple property of Emma Thomson, with the exception of the one-half interest in the mineral rights, which still belonged to L. G. Hardman, Jr., her brother.

L. G. Hardman, Jr., died in 1978; Emma Thomson died in 2007. In 2008, Caroline T. Wilson and James C. Thomson, Jr., individually and as personal representatives of the estate of Emma Thomson (collectively "Wilson"), brought this action against the heirs of L. G. Hardman, Jr., and all other persons claiming an interest in the mineral rights, seeking a declaration that the one-half mineral interest held by L. G. Hardman, Jr., under the 1970 court order, had reverted to Emma Thomson by operation of OCGA § 44-5-168. Shell Hardman Knox and other heirs of L. G. Hardman, Jr. (collectively "Knox") answered, and contended that OCGA § 44-5-168 did not apply. The trial court granted Wilson's motion for summary judgment.

1. Under OCGA § 44-5-168, "the owner of the mineral rights loses them by nonuse plus nonpayment of taxes, as opposed to losing such rights by adverse possession of the fee simple owner." *Fisch v. Randall Mill Corp.*, 262 Ga. 861, 861 (1) (426 SE2d 883) (1993)

---

(D) Shall include any and all prayers regarding the land that the plaintiff may desire. Specifically, the petition may pray that the court find that the plaintiff has obtained title to the mineral rights through adverse possession and that the plaintiff be granted title to mineral rights;

(2) Upon a finding in the plaintiff's favor, the court shall issue a judgment and decree declaring that the mineral rights involved have been lost and that the plaintiff has gained absolute title to such mineral rights; and

(3) Service shall be perfected in the same manner as service on defendants in an in rem proceeding, including service by publication.

(c) Nothing in this Code section shall restrict the court from granting further plenary relief, whether legal or equitable; and the failure of the petition in the plaintiff's favor shall not affect the right of the plaintiff to any other relief, legal or equitable, to which he may be entitled.

(d) Any person named in the petition or any person having an interest in the mineral rights shall have the right to intervene in a case brought under this Code section.

(e) In order to maintain the status quo pending the adjudication of the questions or to preserve equitable rights, the court may grant injunctions and other interlocutory extraordinary relief.

(f) Nothing in this Code section shall apply to a lease for a specific number of years nor to an owner of mineral rights who has leased the mineral rights in writing to a licensed mining operator as defined in Part 3 of Article 2 of Chapter 4 of Title 12.

(citation and punctuation omitted). Essentially, an owner of mineral rights allows his rights in the minerals to lapse when he fails to either work or attempt to work the mineral rights, or has failed to pay taxes upon them, for a period of seven years. See id.; *Georgia Marble Co. v. Whitlock*, 260 Ga. 350 (392 SE2d 881) (1990). It is undisputed that neither Knox, nor L. G. Hardman, Jr., before his death, paid any taxes on the one-half mineral interest at any time after the land became titled in Emma Thomson in 1970. Nor is there any evidence that there was any attempt to work the mineral rights during the seven years prior to suit being filed in 2008.[2]

Nonetheless, Knox contends that OCGA § 44-5-168 does not apply to fractional mineral interests, asserting that the Code section's reference in subsection (a) to "*the* mineral rights" (emphasis supplied) requires the interpretation that OCGA § 44-5-168 (a) applies only if the mineral rights have been severed from the fee and are held as a whole. However, no such limitation appears in the language of the statute, nor is one reasonably read into it. Rather, this Court has previously applied the statute when, as here, half of the mineral rights were retained by a grantor. *Hayes v. Howell*, 251 Ga. 580 (308 SE2d 170) (1983). And, the construction Knox proposes would frustrate the purposes of the statute. OCGA § 44-5-168 "serves dual purposes: to encourage the use of the state's mineral resources and the collection of taxes, or to encourage the use of land free of interference by the holders of mineral rights who neither use nor pay taxes upon them." *Hayes*, supra at 585 (2) (b). For this Court to insert the interpretation urged by Knox would allow indefinite interference with the use of the land by holders of fractional mineral rights, no matter how long they had let their rights remain idle. And, it would do so without doing anything to encourage either the use of mineral resources or the collection of taxes.

2. Knox contends that the trial court erred in failing to apply the doctrine of equitable estoppel. First, it is questionable that Knox ever asked for such relief in the trial court; Knox contends that such action was requested by Knox's assertion of various equitable principles, but concedes that briefing and argument in the trial court did not use "the express words 'equitable estoppel.' " In any event, Knox fails to present evidence justifying the application of the doctrine.

"In essence, estoppel requires an act on the part of one intended to influence the other, and detrimental reliance upon that act by the other. [Cit.]" *Ward v. Morgan*, 280 Ga. 569, 572 (3) (629 SE2d 230)

---

[2] Pursuant to a series of leases, Elmer D. Jackson extracted minerals from the property, beginning sometime prior to 1978. The last of the leases expired in 1994. See Division 2, infra.

(2006). Knox contends that Emma Thomson had consistently recognized the existence of the one-half mineral interest held by L. G. Hardman, Jr., and later by Knox, and that such recognition warrants the application of the doctrine. Evidence pertinent to this claim is that Emma Thomson entered into a series of leases with Elmer D. Jackson for mineral extraction from the property, beginning sometime prior to 1978. In an exchange of letters that year, L. G. Hardman, Jr., inquired of Emma Thomson about the removal of gold from the property, and she replied that some had been removed, she held some, had not sold any, and half of what she held was Hardman's "anytime." Shell Hardman Knox, daughter of L. G. Hardman, Jr., averred that "[o]ver the years," Emma Thomson delivered "vials of gold" to the wife, and later widow, of L. G. Hardman, Jr.

The last of Jackson's mineral leases expired in 1994. In 2002, John B. Hardman, son of L. G. Hardman, Jr., asked Emma Thomson if a rock and gem shop that Jackson was operating on the property affected the mineral rights; she responded that Jackson's wares did not come from the property, and confirmed that any minerals taken from the property would continue to be shared equally between her and L. G. Hardman, Jr.'s heirs.

Knox urges that this evidence shows the existence of an agreement between Emma Thomson and L. G. Hardman, Jr., and later his heirs, that she would have exclusive control over the property during her life, including its mineral rights. This evidence shows recognition on Emma Thomson's part of the one-half interest in the mineral rights held by L. G. Hardman, Jr., and later his heirs, and an intention on Emma Thomson's part to respect that ownership. However, there is no evidence of an agreement by which Emma Thomson undertook to relieve L. G. Hardman, Jr., and later his heirs, of the obligation to comply with the requirements of OCGA § 44-5-168, and there is no evidence that Emma Thomson ever made any promise or commitment intended to influence the holders of the one-half mineral interest to neglect their obligations under OCGA § 44-5-168. See *Ward*, supra. Nor is there a reasonable inference that any holder of any mineral interest relied upon any representation of Emma Thomson's in neglecting to follow OCGA § 44-5-168. The averment of John B. Hardman that in 2002 Emma Thomson affirmed "that the co-tenant relationship was in full force and effect" merely shows a recognition on her part that the heirs of L. G. Hardman, Jr., were owners of half the mineral rights on the property. Similarly, the averments of John B. Hardman and Shell Knox that Emma Thomson was allowed to control "the initiation of mining activities," and that they knew of no effort by anyone, including their aunt Emma Thomson, to pay taxes on the mineral

rights, shows no act on Emma Thomson's part to influence anyone else to ignore their obligations that, if fulfilled, would have avoided the effect of OCGA § 44-5-168; these averments also fail to show any reliance on the part of L. G. Hardman, Jr., or his heirs, on any representation by Emma Thomson that she would ensure that minerals were mined within every seven-year period, or that she would pay taxes on the mineral rights on behalf of others.[3]

As there was no evidence presented that L. G. Hardman, Jr., or his heirs, performed the duties that would have avoided the effect of OCGA § 44-5-168, or that Wilson should be equitably estopped from asserting the operation of the statute, the trial court did not err in granting Wilson's motion for summary judgment.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 8, 2010.

*Cathey & Strain, Dennis T. Cathey, Gaslowitz & Frankel, Robert P. Marcovitch, Kilpatrick Stockton, Wyckliffe A. Knox, Jr.,* for appellant.

*Hulsey, Oliver & Mahar, Samuel L. Oliver, Jason A. Dean,* for appellee.

---

[3] Knox suggests that the mineral rights were never separately assessed, but even if that is the case, it is of no moment; there is no evidence that either L. G. Hardman, Jr., or his heirs, ever took action intended to secure an assessment that might facilitate compliance with the obligations of OCGA § 44-5-168. See *Fisch v. Randall Mill Corp.*, 262 Ga. at 863 (3), supra.