[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10659

_____

DEKALB EVENT CENTER, INC.,
d.b.a. Mansion Elan,

Plaintiff,

WBY, INC.,
d.b.a. Follies,

Plaintiff-Appellant,

*versus*

CITY OF CHAMBLEE, GEORGIA,
a municipal corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-02739-SDG

_____

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

WBY, Inc., dba Follies, is an adult entertainment nightclub located within the City of Chamblee in Georgia. When Follies obtained a liquor license for calendar year 2018 from the City, it was allowed to sell alcohol until 3:00 a.m. In February of 2018, the City enacted Ordinance 754, which amended § 6-152(a) of its Alcohol Code to require establishments selling liquor for consumption on the premises to stop alcohol sales by 2:00 a.m. Monday through Saturday and by 11:59 p.m. on Sunday. The City began enforcing Ordinance 754 in June of 2018, and that is when Follies started complying with it.

Believing that Ordinance 754—among other things—violated its vested property rights for the remainder of 2018 under the Georgia Constitution, Follies sued the City in federal court. The district court ultimately granted summary judgment in favor of the City, holding in relevant part that the 2018 liquor license did not provide Follies with a vested property right under Georgia law in

the hours of permissible alcohol sales. *See WBY, Inc. v. City of Chamblee*, 434 F. Supp. 3d 1298, 1305–08 (N.D. Ga. 2020).

Following oral argument, we affirm. Although Follies had a vested right in its 2018 liquor license, that vested right did not extend to the hours in which alcohol could be sold.[1]

## I

Until 2014, Follies was located in an unincorporated portion of DeKalb County, Georgia. In 2014, the City of Chamblee annexed certain territory from DeKalb County, including the sites where Follies and other nightclubs operated. At the time of the annexation, DeKalb County and the City had different regulations concerning the sale of alcohol for on-premises consumption.

Although DeKalb County permitted the sale of liquor until 3:55 a.m., with businesses allowed to stay open until 4:55 a.m., the City only allowed alcohol to be sold until 2:00 a.m., with businesses allowed to remain open until 3:00 a.m. After the annexation, the City temporarily permitted the businesses in the newly-annexed territory to continue operating as they did in DeKalb County. Unlike DeKalb County, the City prohibited alcohol consumption with

---

[1] We asked the parties to file supplemental briefs addressing whether the district court properly exercised its discretion under 28 U.S.C. § 1367(c) in adjudicating Follies' state-based claims after dismissing the federal claims. Because discretion to exercise supplemental jurisdiction under § 1367(c) "is not a jurisdictional matter," *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009), and because neither of the parties have contested the district court's exercise of that discretion, we do not address the issue.

nude dancing. But it also temporarily permitted Follies to continue operating under DeKalb County's terms.

## A

The City regulates the sale or service of alcoholic beverages under §§ 6-1 through 6-320 of its Alcohol Code. All establishments serving alcoholic beverages must obtain a liquor license under the Code. *See* City of Chamblee Alcohol Code § 6-41. Liquor licenses last for one calendar year and must be renewed annually. *See id.* at § 6-50. Once issued, a liquor license can be suspended or revoked by the City only for due cause. *See id.* at § 6-51.

Prior to 2018, § 6-152 of the Code allowed the sale of alcohol for consumption on the premises until 3:00 a.m. (the following day) on Monday through Friday, until 2:55 a.m. (the following day) on Saturday, and until 3:00 a.m. (the following day) on Sunday. All licensed establishments not open 24 hours as a restaurant had to close by 3:30 a.m. each day.

As noted, the City revised § 6-152 of the Code in February of 2018 by adopting Ordinance 754. The amended § 6-152 allows the sale of alcohol for consumption on the premises until 2:00 a.m. (the following day) on Monday through Saturday, and 11:59 p.m. on Sunday (with extended hours for certain dates, including Super Bowl Sunday, St. Patrick's Day, and July 4). All licensed establishments not open 24 hours as a restaurant must close by 2:30 a.m. each day.

## B

Follies first obtained a liquor license from the City in 2014, and then renewed the license annually. When Follies filed for its 2018 renewal in late 2017, the City had not yet amended its Alcohol Code. So when Follies began operating under the 2018 license in January of that year, it was allowed to sell alcohol for consumption on the premises essentially until 3:00 a.m. each day. When Ordinance 754 amended § 6-152 of the Code, Follies was forced to stop selling alcohol at 2:00 a.m. Monday through Saturday and at 11:59 p.m. on Sunday. As a practical matter, Follies lost about 10 hours of alcohol sales a week (starting in June of 2018) due to Ordinance 754.

The 2018 liquor license permits Follies to "pour[ ] liquor, beer and wine." D.E. 85-4 at 1. It does not have any language concerning the hours when liquor can be sold on the premises and contains the following proviso: "This license is mere privilege subject to revocation or annulment and any future ordinances which may be enacted by the City of Chamblee." *Id.* At the bottom, in smaller (almost fine) print, the license also states the following: "[P]ursuant to a Resolution of the Chamblee City Council passed April 15, 2014, the City chooses to temporarily abide by the 2007 settlement agreement [between DeKalb County and its adult clubs] but by doing so does not waive its right to discontinue abiding by the agreement at any time in the future." *Id.*

## II

We review a district court's grant of summary judgment *de novo. See Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019). Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and a party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A

The question presented is whether the district court erred in ruling that Ordinance 754 did not infringe on any of Follies' vested property rights under Georgia law. Georgia's Constitution provides broader protections for vested rights than the United States Constitution. *See Hayes v. Howell*, 308 S.E.2d 170, 175 (Ga. 1983). In Georgia, due process rights prohibit the passage of retroactive laws that "injuriously affect the vested rights of citizens." *Goldrush II v. City of Marietta*, 482 S.E.2d 347, 357 (Ga. 1997) (quoting *Recycle & Recover, Inc. v. Ga. Bd. of Nat. Res.*, 466 S.E.2d 197, 199 (Ga. 1996)).

The district court read the Georgia Supreme Court's decision in *Goldrush II* as holding that a party "cannot obtain a vested property right in an alcohol license." *WBY*, 434 F. Supp. 3d at 1306. Although we agree with Follies that the district court misread *Goldrush II*, we ultimately conclude, as did the district court, that Ordinance 754 did not impair any of Follies' vested property rights.

At issue in *Goldrush II* was a City of Marietta ordinance that prohibited the issuance of liquor licenses to establishments that

provided entertainment requiring the issuance of an adult entertainment license. *See Goldrush II*, 482 S.E.2d at 350. Essentially, the ordinance barred the sale of alcohol in adult entertainment establishments. The ordinance was enacted in January of 1995 but provided that liquor licenses already issued would not be subject to the new ordinance until December 31, 1995. *See id.* at 350–51. As relevant here, certain adult entertainment establishments in *Goldrush II* argued that under Georgia law "they ha[d] a vested property right in the renewal of their adult entertainment and alcohol licenses . . . which prevent[ed] the city from enacting retrospective laws which adversely affect[ed] their ability to provide both liquor and adult entertainment." *Id.* at 357.

The Georgia Supreme Court first addressed whether the adult entertainment establishments had any vested property rights under Georgia law in their alcohol licenses. It held that "[a] license which entitles the holder to operate a business and the continued possession of which may become essential in the pursuit of a livelihood is a protectable property interest under the due process clause. A law which provides that a license can be suspended or revoked only upon proof of certain contingencies has . . . given the license holder a legitimate claim of entitlement." *Id.* at 358–59 (internal citations and quotations omitted). Because the Marietta City Code "set[ ] forth the criteria which, if met, result[ ] in the issuance of a license, and specifie[d] that a liquor license issued by the city can be suspended or revoked only upon a showing of cause, the

city code created a protectable property interest in the license." *Id.* at 359.

Having determined that the adult entertainment establishments "ha[d] a vested right in the licenses issued them on an annual basis," the Georgia Supreme Court "next consider[ed] whether each [establishment] ha[d] a vested right in continued re-issuance of its licenses." *Id.* On that question, it ruled that the establishments "did not have a protectable property interest in their [license] renewal," and explained that "[t]hose who hold licenses that expire annually act at their peril and assume the risk that their licenses might not be renewed." *Id.* at 360, 361. The adult entertainment establishments, therefore, lost on their claim that they were entitled to renewal of their licenses in future years (recall that the Marietta ordinance did not become effective until the 1996 calendar year and did not affect the licenses issued for 1995).

As we understand *Goldrush II*, under Georgia law (1) the holder of an annual liquor license has a vested property right in that license for the year of issuance if the license can only be suspended or revoked for cause, but (2) the holder of an annual liquor license has no vested property right in the license's continued renewal. Based upon this framework, Follies had a vested property right in its 2018 alcohol license for the 2018 calendar year. The sale of alcohol is essential to the financial livelihood of a bar, and the Alcohol Code provides that a liquor license can only be suspended or revoked for cause. Follies thus had a legitimate claim of entitlement during 2018 for the liquor license it received for that year, and the

20-10659                Opinion of the Court                9

ultimate holding in *Goldrush II* does not control because Follies is not asserting a vested property right to renewal of its license. To the extent that the district court thought otherwise, we respectfully disagree.

## B

That said, the existence of a vested property right does not end the analysis. There is still the question of whether, under Georgia law, Ordinance 754 impaired or restricted Follies' vested property right in its 2018 alcohol license. On that question, we agree with the district court that it did not.[2]

According to Follies, the City could not change anything related to the rights conferred by the 2018 liquor license, including the hours of operation. *Goldrush II*, however, expressly states that liquor licensees "do not have a vested right in the law never changing, and are not exempt from the exercise of [a] city's police power by its elected officials to further an important governmental

---

[2] The City asserts that the vested property rights claim is not justiciable because Follies falsified the percentage of revenue derived from alcohol sales to obtain the 2018 liquor license. On this record, we reject the argument, as it is not really a contention about justiciability in the constitutional sense. Standing "in no way depends on the merits of the plaintiff's contention," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), and as things stand the 2018 license has never been revoked or annulled by the City. As the holder of a 2018 license, Follies has asserted a financial injury (the loss of revenue) due to the City's alleged violation of its vested property rights, and that is enough to confer standing. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (monetary harm "constitutes an injury in fact under the law").

interest." *Goldrush II*, 482 S.E.2d at 360. *See also Hayes*, 308 S.E.2d at 175 (explaining that vested property rights are "subject to the proper exercise of the police power by legislative bodies"). The City has general authority to enact laws regarding businesses' hours of operation, and Follies does not challenge that authority. *See* Alcohol Code § 6-43(a) ("All licenses . . . shall be . . . subject to all terms and conditions imposed by this Code and state law."). Indeed, as noted earlier, Follies' 2018 liquor license states that it is subject to "any future ordinances which may be enacted by the City." D.E. 85-4 at 1.

Had Ordinance 754 flatly prohibited Follies from selling alcohol during the rest of 2018—the year for which it had already acquired a liquor license—Follies may have had a valid impairment claim under *Goldrush II*. But that is not what Ordinance 754 did; it changed only the hours during which alcohol could be sold on the premises.

As the district court correctly determined, *see WBY*, 434 F. Supp. 3d at 1307, the Georgia Supreme Court's decision in *Quetgles v. City of Columbus*, 491 S.E.2d 778 (Ga. 1997)—issued months after *Goldrush II*—dooms Follies' impairment theory. In *Quetgles*, the City of Columbus enacted an ordinance prohibiting private modeling sessions between customers and employees at adult entertainment establishments. *See Quetgles*, 491 S.E.2d at 779. Certain of those establishments argued, in part, that the ordinance deprived them of a "valuable property right" because they

had contracted with models and remodeled their premises to facilitate such sessions. *See id.* at 781.

The Georgia Supreme Court rejected the claim: "Plaintiffs . . . have no vested right to offer one-on-one modeling—despite expenditures toward that end—because none of plaintiffs' [adult entertainment] licenses specifically permit one-on-one nude or seminude modeling or any other conduct prohibited by the ordinance." *Id.* It explained that though the "plaintiffs may suffer economic injury in complying with the ordinance, they are still free to do business in accordance with the licenses they have been granted. The ordinance does not eliminate plaintiffs' businesses; it regulates their businesses by imposing a manner restriction on how plaintiffs can operate under their adult entertainment licenses."  *Id.*

The 2018 liquor license issued to Follies did not specifically guarantee that alcohol could be sold during certain set hours. As a result, Follies had no more than a unilateral expectation that it would be able to sell alcohol during specific hours. Under *Quetgles*, Follies did not have any vested property rights in its hours of operation during 2018 by virtue of the liquor license it secured for that year. Stated differently, in limiting the hours of on-premises alcohol sales, Ordinance 754 did not impair any vested property rights Follies acquired through its 2018 license. *See also Chambers v. Peach Cnty.*, 492 S.E.2d 191, 193 (Ga. 1997) ("[A]ppellant had no vested right to offer adult entertainment and alcohol service because none of the licenses held by [appellant] specifically permitted that conduct.").

### III

We affirm the district court's grant of summary judgment in favor of the City on Follies' vested property rights claim under Georgia law.

AFFIRMED.