S96A1494. GOLDRUSH II et al. v. CITY OF MARIETTA et al.
S96A1496. VARSALONA'S ITALIAN RESTAURANT
d/b/a BOOMER'S et al. v. CITY OF MARIETTA et al.
S96A1497. TUDOR et al. d/b/a CYPRUS LOUNGE
v. CITY OF MARIETTA et al.
(482 SE2d 347)

BENHAM, Chief Justice.

Appellants are establishments which provide adult entertainment and are located within the City of Marietta. For several years, each establishment has applied for and received annual licenses issued by the city authorizing the businesses to provide adult entertainment and to serve alcoholic beverages.[1] In January 1995, acting pursuant to the authority granted by a 1994 amendment to the Georgia Constitution, the Marietta City Council passed an amendment to the city's adult entertainment ordinance which amendment provided that a liquor license would not be issued for a location at which was performed entertainment that required the issuance of an adult entertainment license. In effect, the amended adult entertainment ordinance banned alcohol in adult entertainment establishments by requiring an applicant to choose between obtaining a liquor license or obtaining a license to provide adult entertainment. The amended ordinance also provided that licenses previously granted would not be subject to the amendment until December 31, 1995, "at which time all licensees within the City of Marietta shall be subject to this provision, including those licensees licensed before the effective date hereof."

Following passage of the 1995 amendment to the city's adult entertainment ordinance, each of the appellants filed a separate action against the city, its council members, and its mayor, seeking a declaratory judgment on the constitutionality of certain provisions of Marietta's ordinances; injunctive relief against enforcement of the ordinances; and damages. Appellant Cyprus Lounge also sought a writ of mandamus requiring the city to issue to it adult entertainment and liquor licenses for 1996. The trial court consolidated the three cases and, after an extended hearing, granted summary judg-

---

[1] Cyprus Lounge had adult entertainment and liquor licenses for 1992, 1993, 1994, and 1995; Boomer's had the necessary permits for 1991, 1992, 1993, 1994, and 1995, and Goldrush II for 1993, 1994, and 1995.

ment to the defendants and denied injunctive relief to the plaintiffs. Each of the businesses and the person to whom the adult entertainment and liquor licenses were issued appealed the trial court's judgment to this Court, and we have consolidated the three appeals.[2]

1. The 1995 Marietta ordinance amendment was enacted following the ratification of an amendment to the Georgia Constitution which is now embodied in Art. III, Sec. VI, Par. VII. The constitutional amendment gives the State of Georgia "full and complete authority to regulate alcoholic beverages and to regulate, restrict, or prohibit activities involving alcoholic beverages[,]" including the regulatory authority given the States by the Twenty-first Amendment to the U. S. Constitution. The constitutional amendment goes on to delegate this regulatory authority to the counties and municipalities of Georgia "for the purpose of regulating, restricting, or prohibiting the exhibition of nudity, partial nudity, or depictions of nudity in connection with the sale or consumption of alcoholic beverages. . . ." Before the trial court, as well as on appeal, appellant Boomer's contends that the constitutional amendment is a fatally overbroad unconstitutional infringement upon the freedom of expression guaranteed by the First Amendment to the U. S. Constitution.

The constitutional amendment's authorization to the State to "regulate, restrict, or prohibit activities involving alcoholic beverages" and its delegation of regulatory authority to local governments to regulate, restrict, or prohibit nudity, partial nudity, or depictions of nudity, without regard to whether the activity limited or the nudity proscribed is constitutionally protected, run counter to the holdings in *Harris v. Entertainment Systems*, 259 Ga. 701 (386 SE2d 140) (1989), and *Pel Asso, Inc. v. Joseph*, 262 Ga. 904 (427 SE2d 264) (1993). In those cases, this Court found a statute and an ordinance overbroad because one went beyond "prohibiting nude dancing in bars" and the other applied to mainstream performance houses and private conduct as well as barroom nude dancing. Despite the appearance of similar overbreadth in the 1994 constitutional amendment, we decline to brand the constitutional amendment as unconstitutionally overbroad because we perceive a fundamental distinction between it and the statute and ordinance which were found lacking in *Harris* and *Pel Asso, Inc.*: the constitutional amendment is not a self-executing amendment, but requires the passage of legislation to give it effect.

"A constitutional provision may be said to be self-executing

---

[2] According to the trial court's order, the parties agreed in December 1995 that the businesses could continue to serve alcohol and provide adult entertainment pending resolution of appeals filed in this Court.

> if it supplies a sufficient rule by means of which the right given may be enjoyed and protected or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."

*Davis v. Burke*, 179 U. S. 399, 403 (21 SC 210, 45 LE 249) (1900), quoting Cooley, Constitutional Limitations. The constitutional amendment at issue here is not self-executing because it "merely indicates a line of policy or principle without supplying the means by which such policy or principle are to be carried into effect," and because "it appears from the language . . . that subsequent legislation was contemplated to carry it into effect." 16 CJS 123, 126, Constitutional Law, § 46. The 1994 constitutional amendment "clearly anticipates" the enactment of legislation by the General Assembly or a local governing body to implement the principles set forth in the amendment. *Cox v. French*, 640 SW2d 786 (Ark. 1982). See *J. W. A. v. State of Ga.*, 233 Ga. 683 (212 SE2d 849) (1975). Because implementation of the constitutional amendment requires legislative enactment, the constitutional amendment is not effective until the legislation is passed. *State v. Pendergrass,* 633 P2d 1113 (Hawaii 1981). See also *DeKalb County v. Allstate Beer*, 229 Ga. 483 (2) (192 SE2d 342) (1972). Consequently, while the wording of the constitutional amendment authorizes enactment of local legislation that would be condemned as overbroad, it is the language of the enacted local legislation, not the constitutional amendment, which must be examined for overbreadth. That being so, we decline to declare the constitutional amendment unconstitutionally overbroad.

2. (a) Appellant Varsalona asserts that the 1994 constitutional amendment violates the Georgia constitutional provision prohibiting the presentation to voters of a proposed constitutional amendment containing more than one subject matter. 1983 Ga. Const., Art. X, Sec. I, Par. II.

"The test of whether . . . a constitutional amendment violates the multiple subject matter rule is whether all of the parts of . . . the constitutional amendment are germane to the accomplishment of a single objective. [Cit.]" *Carter v. Burson*, 230 Ga. 511 (3) (198 SE2d 151) (1973). See also *Sears v. State*, 232 Ga. 547 (5) (208 SE2d 93) (1974). It is apparent that the general purpose of the amendment is the regulation of alcoholic beverages. Because the portion of the amendment delegating to local governmental units the authority to regulate the exhibition of nudity in connection with the sale of alcoholic beverages is germane to the general subject of the regulation of alcoholic beverages, the amendment does not violate the prohibition against multiple subject matters.

686

(b) Varsalona also contends that the wording of the ballot[3] concerning the constitutional amendment deceived the voters of Georgia, resulting in a violation of the due process guarantees of the Fourteenth Amendment to the U. S. Constitution. We disagree.

"[T]his court . . . [conducts] only a minimal review of ballot language if the state followed all of the constitutionally and statutorily required procedures for amending the constitution . . . ." *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 51 (414 SE2d 638) (1992). There is no contention in the case at bar that the prescribed amendment procedure was not followed. "The only limitation on the General Assembly in drafting ballot language is that the language be adequate to enable the voters to ascertain which amendment they are voting on. [Cit.]" Id. See also *Burton v. Georgia*, 953 F2d 1266, 1269 (11th Cir. 1992) ("As long as citizens are afforded reasonable opportunity to examine the full text of the proposed amendment, . . . substantive due process requires no more than that the voter not be deceived [by the ballot language] about what amendment is at issue."). We conclude that the language used on the ballot is not susceptible to appellant's attack for it clearly enabled the voters to ascertain what amendment they were voting on.

3. Since the constitutional amendment which authorized the passage of the 1995 amendment to Marietta's ordinance has withstood Boomer's constitutional attack, we next focus our attention on the analytical approach to be taken with regard to the amended ordinance in light of the passage of the constitutional amendment. In *Harris v. Entertainment Systems*, 259 Ga. 701 (1) (b), supra, this Court concluded that the State's exercise of its police power, as far as nude dancing is concerned, was limited by Georgia's constitutional guaranty of free expression, and scrutinized the statute which impinged upon protected expression under the state constitution's free speech clause, Art. I, Sec. I, Par. V. See *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252 (297 SE2d 250) (1982). The court took that approach after conceding the possibility that passage of the Twenty-first Amendment to the federal constitution restored to the State police power otherwise limited by the First Amendment, but noting that the freedom of expression protected by the state constitution had not been similarly limited by ratification of a state constitutional

---

[3] The ballot read as follows:

Shall the Constitution of the State of Georgia be amended so that alcoholic beverages and activities involving nudity and alcoholic beverages, such as in nude dance clubs, may be regulated, restricted, or prohibited by counties and municipalities and so that the state shall have full and complete authority to regulate alcoholic beverages under the powers granted by the Twenty-First Amendment to the United States Constitution?

amendment equivalent to the Twenty-first Amendment.[4] Id. See also *Chambers v. Peach County*, 266 Ga. 318, n. 2 (467 SE2d 519) (1996); *Pel Asso, Inc. v. Joseph*, supra, 262 Ga. 904, 905, n. 1; *Gravely v. Bacon*, 263 Ga. 203, 208 (429 SE2d 663) (1993) (Hunt, P. J., concurring). But see *Illusions on Peachtree Street v. Young*, 257 Ga. 142 (3) (356 SE2d 510) (1987), where this Court, faced with a First Amendment challenge to a city ordinance, relied on the broad power to regulate alcohol it said had been given local governments by the Twenty-first Amendment; and *Jackson v. Three Aces Co.*, 249 Ga. 395, 396 (291 SE2d 522) (1982), where this Court stated that the Twenty-first Amendment vested state and local governments with "broad, sweeping authority to refuse to license the sale of liquor in establishments in which even non-obscene naked dancing is performed. [Cit.]"

Believing the passage of the 1994 constitutional amendment to have provided the Georgia Constitution with its equivalent of the Twenty-first Amendment to the U. S. Constitution[5] and relying on U. S. Supreme Court case law, the trial court concluded that Marietta's amended ordinance should be analyzed under the principles of the Twenty-first Amendment rather than the First Amendment. Faced, however, with a dearth of Georgia case law examining a local ordinance enacted after the 1994 constitutional amendment, the trial court relied on pre-amendment case law and applied Georgia's free expression analysis, the *Paramount Pictures* test, to the amended ordinance. See *Paramount Pictures v. Busbee*, supra, 250 Ga. 252. We conclude that, under recent case law from the U. S. Supreme Court, the trial court was in error when it determined that passage of the 1994 constitutional amendment required analysis of the Marietta ordinance under the Twenty-first Amendment. However, as will be

---

[4] Georgia is not alone in using its state constitutional guaranty of freedom of expression, unburdened by a "mini-Twenty-first Amendment," to find unconstitutional a statute or ordinance proscribing nude dancing in establishments with liquor licenses. See *Mickens v. City of Kodiak*, 640 P2d 818 (Alaska 1982); *Bellanca v. N.Y. State Liquor Auth.*, 429 NE2d 765, 445 NYS2d 87 (1981); *Commonwealth v. Sees*, 373 NE2d 1151 (Mass. 1978); *Cleveland's P.M. on the Boardwalk v. Ohio Liquor Control Comm.*, 1997 Ohio App. LEXIS 231 (Jan. 23, 1997); *Sekne v. City of Portland*, 726 P2d 959 (Or. App. 1986). Cf. *Knudtson v. City of Coates*, 519 NW2d 166 (Minn. 1994) (where the Minnesota Supreme Court, after noting that the Minnesota Constitution did not contain a provision equivalent to the Twenty-first Amendment, found the ordinance in question did not violate the state constitution's free speech guaranty because it was a reasonable exercise of police power only incidentally controlling free speech); *City of Billings v. Laedeke*, 805 P2d 1348 (Mont. 1991) (where the Montana Supreme Court noted the absence from its state constitution of a Twenty-first Amendment equivalent and then determined that Montana's free speech guaranty was co-extensive with the First Amendment).

[5] The Twenty-first Amendment to the U. S. Constitution did two things: it repealed the Eighteenth Amendment which totally prohibited the manufacture, sale, or transportation of intoxicating liquors within the United States and its territories, and it "delegated to the several States the power to prohibit commerce in, or the use of, alcoholic beverages." *44 Liquormart v. Rhode Island*, 517 U. S. ___ (116 SC 1495, 134 LE2d 711) (1996).

seen, the trial court's use of the applicable *Paramount Pictures* test rendered the error harmless.

It is easy to see why the trial court believed that freedom of expression had been supplanted by the authority delegated to the States by the Twenty-first Amendment and by the authority delegated by the State of Georgia to local governments in the 1994 constitutional amendment. In *California v. LaRue*, 409 U. S. 109, 118 (93 SC 390, 34 LE2d 342) (1972), the U. S. Supreme Court concluded an opinion in which it held that California's regulations prohibiting certain sexual performances and the dispensation of liquor were not violative of the First Amendment by stating that, "[g]iven the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires," it could not hold the state regulations facially invalid under the U. S. Constitution. In *Doran v. Salem Inn*, 422 U. S. 922, 932-933 (95 SC 2561, 45 LE2d 648) (1975), the court, summarizing its *LaRue* construction of the Twenty-first Amendment, stated that "the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program." See also *City of Newport v. Iacobucci*, 479 U. S. 92, 95 (107 SC 383, 93 LE2d 334) (1986). In *N.Y. State Liquor Auth. v. Bellanca*, 452 U. S. 714, 717 (101 SC 2599, 69 LE2d 357) (1981), the court held that the State's power under the Twenty-first Amendment to ban the sale of alcohol entirely "includes the lesser power to ban the sale of liquor on premises where topless dancing occurs." Although the U. S. Supreme Court has repeatedly noted that the Twenty-first Amendment does not qualify individual rights protected by the Bill of Rights (*Craig v. Boren*, 429 U. S. 190 (97 SC 451, 50 LE2d 397) (1976)) or override any other relevant constitutional provision (*California v. LaRue*, supra, 409 U. S. at 120 (Stewart, J., concurring)), the court's statements in *LaRue, Doran, Bellanca*, and *Iacobucci* became the basis for rulings by state appellate courts which upheld a statute or ordinance banning non-obscene nude dancing in a location with a liquor license.[6] See *State v. Larson*, 653 S2d 1158 (La. 1995); *Proctor v. County of Penobscot*, 651 A2d 355 (Me. 1994); *City of Billings v. Laedeke*, 805 P2d 1348 (Mont. 1991); *Misleh v. State*, 799 P2d 631 (Okla. Cr. App. 1990); *State of Idaho v. Pierandozzi*, 784 P2d 331 (Idaho 1989); *Morris v. Municipal Court*, 652 P2d 51 (Cal. 1982); *Nall v. Baca*, 626 P2d 1280) (N.M. 1980); *Barmat*

---

[6] An entertainment program may not be prohibited solely because it contains nudity. *Schad v. Borough of Mt. Ephraim*, 452 U. S. 61, 67 (101 SC 2176, 68 LE2d 671) (1981). The "customary 'barroom' type of nude dancing" may involve expression minimally protected by the First Amendment. *Doran v. Salem Inn*, supra, 422 U. S. at 932.

*v. Robertson,* 611 P2d 101 (Ariz. App. 1980). As was noted earlier, this Court also saw the power of the Twenty-first Amendment as a means by which expression might be controlled. See *Illusions,* supra, 257 Ga. 142; *Three Aces Co.,* supra, 249 Ga. 395.

This long-used rationale has been called into question by the Supreme Court's recent disavowal of the reasoning in *LaRue* "insofar as it relied on the Twenty-first Amendment." *44 Liquormart v. Rhode Island,* 517 U. S. ___ (116 SC 1495, 134 LE2d 711) (1996). In *44 Liquormart,* the Supreme Court explained that the Twenty-first Amendment "limits the effect of the dormant Commerce Clause on a State's regulatory power over the delivery or use of intoxicating beverages within its border, [but] . . . 'does not license the States to ignore their obligations under other provisions of the Constitution.' [Cit.]" Id., 116 SC at 1514. The court noted that each state has ample power "[e]ntirely apart from the Twenty-first Amendment," i.e., the police power, to prohibit the sale of alcoholic beverages in inappropriate locations, and that the *LaRue* decision would have reached the same result had the court relied exclusively on the State's exercise of its police power instead of buttressing it with the regulatory authority provided by the Twenty-first Amendment. In conclusion, the Supreme Court expressly held that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment." Thus, "the suggestion in [*LaRue, Doran, Bellanca,* and *Iacobucci*] that the Twenty-first Amendment was a font of some sort of 'super authority' above and beyond the considerable police powers retained by the States and which trumped the First Amendment when liquor regulation was at issue was clearly rejected in *44 Liquormart.*" *J & B Social Club #1 v. City of Mobile,* 1996 U. S. Dist. LEXIS 15498, Oct. 2, 1996) (S. D. Ala.).

It is now clear that Georgia's ratification of a "mini-Twenty-first Amendment" to the State constitution provided the means by which the State delegated to local government its authority to regulate alcohol,[7] but its passage does not affect the analysis to be given a

---

[7] The states may delegate the broad power given them by the Twenty-first Amendment "as they see fit." *City of Newport v. Iacobucci,* supra, 479 U. S. at 96. A state's failure to delegate its Twenty-first Amendment authority to local governments within the state has resulted in a local ordinance being found unconstitutional. See *Connor v. Town of Hilton Head Island,* 442 SE2d 608 (S.C. 1994). Cf. *Krueger v. City of Pensacola,* 759 F2d 851, 854 (11th Cir. 1985), where the 11th U. S. Circuit Court of Appeals held that Florida's failure to delegate its Twenty-first Amendment regulatory authority to local governments required the city to justify its ordinance under "[a] stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government's police power."

statute or ordinance which allegedly impinges upon the constitution-ally-guaranteed right of free speech and expression. Thus, application of our tripartite *Paramount Pictures* test or the First Amendment analytical framework from which it is derived remains appropriate for content-neutral legislation.[8]

4. Marietta's ordinance amendment is "content-neutral" legislation if it is " ' "justified without reference to the content of the regulated speech." [Cit.]' " *Chambers v. Peach County*, supra, 266 Ga. at 319. When adult entertainment establishments are involved, the "regulated speech" is the constitutionally-protected expressive conduct of nude dancing. *Harris v. Entertainment Systems*, supra, 259 Ga. 701. The principal inquiry in determining whether a legislative act is content-neutral is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys. [Cit.] The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. [Cit.]" *Ward v. Rock Against Racism*, 491 U. S. 781, 791 (109 SC 2746, 105 LE2d 661) (1989).[9] An ordinance designed to combat the undesirable secondary effects of sexually explicit businesses is content-neutral. *City of Renton v. Playtime Theatres*, 475 U. S. 41, 49 (106 SC 925, 89 LE2d 29) (1986); *Chambers v. Peach County*, supra, 266 Ga. at 319. See also *Harris v. Entertainment Systems*, supra, 259 Ga. at 703. Before enacting an ordinance to combat undesirable secondary effects, a legislative body is required to consider specific evidence of the undesirable secondary effects that it reasonably believes relevant to the problems it seeks to address by passing the ordinance. *Chambers v. Peach County*, supra, 266 Ga. at 321.

The preamble to the amending ordinance passed by the Marietta

---

[8] The *Paramount Pictures* three-pronged study of statutes and ordinances to determine whether the free expression guaranty of the Georgia Constitution has been violated is derived from the analytical framework applied by federal courts when measuring legislative enactments against the First Amendment of the U. S. Constitution. *Paramount Pictures*, supra, 250 Ga. at 255, n. 5.

[9] As *Ward* makes clear, determining whether legislation is content-neutral depends upon the governing body's purpose in passing the legislation. Accordingly, the *content* of the legislation, i.e., the regulation of adult entertainment establishments, does not control whether the legislation is content-neutral. This Court's statement in *Club Southern Burlesque v. City of Carrollton*, 265 Ga. 528 (1) (457 SE2d 816) (1995), rejecting the club's contention that the ordinance regulating adult entertainment establishments was not content-neutral, should not be read as a holding that *all* ordinances regulating adult entertainment establishments are content-neutral. As noted in *Club Southern*, the *Paramount Pictures* standard of review is used only when the questioned legislation is found to be content-neutral, and the use of the *Paramount Pictures* test in two earlier cases reviewing ordinances nearly identical to the ordinance being reviewed in *Club Southern* led to the conclusion that the *Club Southern* ordinance was also content-neutral.

City Council stated that the city council's enactment of the amendment was based on the experiences of other urban counties and municipalities believed to be relevant to Marietta's problems, and a review of a Marietta police report concerning criminal activity around the three existing clubs offering adult entertainment and alcohol. The preamble also contained the city council's finding that "public nudity (either partial or total) under certain circumstances, particularly circumstances related to the sale and consumption of alcoholic beverages and so-called nude bars or establishments offering so-called nude entertainment or adult entertainment begets criminal activity and tends to create undesirable community conditions." The preamble listed as "undesirable community conditions identified with nudity and alcohol" the depression of property values in the surrounding neighborhood, the increased expenditure for law enforcement, the increased burden on the judicial system due to increased criminal behavior, and acceleration of community blight caused by the concentration of such establishments in particular areas. The transcript of the city council meeting at which the ordinance amendment was discussed and passed reflects that citizens and elected representatives voiced concern about property values and the need to close nude dancing establishments. The transcript also shows that council members considered studies from other cities which showed a correlation between the presence of adult entertainment and an increase in crime. The city's chief of police appeared at the council meeting and stated that the rate of calls for police service was slightly higher in the area surrounding the three licensees than at other establishments serving alcohol. He acknowledged that his statistics reflected calls for police service made from the areas studied, and that each call did not reflect the commission of a crime. In affidavits executed after the lawsuits at bar were filed, each of the council members who voted in favor of the ordinance amendment swore that he/she relied upon the testimony and evidence presented at the city council meeting at which the ordinance amendment was passed, including the studies from other cities. Each council member averred that the studies were "relevant to the City of Marietta, the problems faced by the City of Marietta and the problems addressed by the Ordinance."

Appellants Tudor and Cyprus Lounge assert that the trial court's finding, implicit in its application of the *Paramount Pictures* test, that the ordinance was content-neutral was erroneous in light of evidence that the mayor and several council members expressed a desire in published reports to eliminate nude dancing establishments from Marietta. " '[O]nly the clearest proof could suffice to establish the unconstitutionality of a statute' on the ground that 'a punitive purpose in fact lay behind the statute.' " *Ambassador Books & Video*

*v. Little Rock,* 20 F3d 858, 863 (8th Cir. 1994), quoting *Fleming v. Nestor,* 363 U. S. 603, 617 (80 SC 1367, 4 LE2d 1435) (1960). Judicial inquiry into legislative motives or purposes is a "hazardous matter," for what motivates one legislator to make a comment about a law is not necessarily what motivates fellow legislators to enact the law. *United States v. O'Brien,* 391 U. S. 367, 383 (88 SC 1673, 20 LE2d 672) (1968). If it is established that the "predominate intent" of the enacted legislation was to combat or avoid pernicious secondary effects, then the legislation is deemed to be content-neutral. See *City of Renton v. Playtime Theatres,* supra, 475 U. S. at 48. With these standards in mind, we conclude that the evidence upon which appellants rely is insufficient as a matter of law to establish improper intent. *Ambassador Books & Video v. Little Rock,* supra, 20 F3d 858; *Colacurcio v. City of Kent,* 1996 U. S. Dist. LEXIS 16514 (W.D. Wash.) (Nov. 1, 1996). In light of the city council's predominate goal of combating pernicious secondary effects and the lack of sufficient evidence to establish an improper motive on the part of council members, we conclude the ordinance is content-neutral.

5. Since the ordinance amendment was content-neutral, we apply the tripartite *Paramount Pictures* test to determine whether the restriction imposed on expression passes constitutional muster: (1) Does the ordinance further an important governmental interest? (2) Is that interest unrelated to the suppression of speech? and (3) Is the legislation an incidental restriction of speech no greater than essential to further the important governmental interest? *Chambers v. Peach County,* supra, 266 Ga. at 319. As noted above, the stated purpose of the ordinance amendment was to control criminal behavior and prevent undesirable community conditions. A city has a substantial government interest in "attempting to preserve the quality of urban life . . . ." *City of Renton v. Playtime Theatres,* supra, 475 U. S. at 50. The "reduction of criminal activity and prevention of the deterioration of neighborhoods are important government interests . . . ." *Discotheque v. City Council of Augusta,* 264 Ga. 623, 624 (449 SE2d 608) (1994). The city substantiated its declaration that the amended ordinance was necessary to curb the unwanted secondary effects of mixing alcohol and adult entertainment through the experiences of other cities that the council members reasonably believed to be relevant to the problems faced by Marietta. The city's desire to preserve the quality of urban life and its attempt to reduce crime and prevent neighborhood deterioration by separating alcohol from adult entertainment are important government interests unrelated to the suppression of speech. Id. Finally, the ordinance's application is sufficiently narrowly tailored because it is limited to the modes of expression implicated in the production of negative secondary effects — those establishments that provide alcohol and entertainment requir-

ing an adult entertainment license — thereby exempting mainstream performance houses, museums, or theaters. See *S. J. T., Inc. v. Richmond County*, 263 Ga. 267 (3) (430 SE2d 726) (1993). Compare *Pel Asso, Inc. v. Joseph*, supra, 262 Ga. 904. We conclude that the ordinance satisfies the three-pronged *Paramount Pictures* test and affirm the trial court's conclusion that the ordinance is a proper exercise of the city's police power.

6. In light of the amended Marietta ordinance, none of the appellants received the appropriate licensing in 1996 to permit them to provide adult entertainment and alcohol at the same location.[10] Appellants contend they have a vested property right in the renewal of their adult entertainment and alcohol licenses which entitles them to due process of law and which prevents the city from enacting retrospective laws which adversely affect their ability to provide both liquor and adult entertainment. Under both the federal and state constitutions, one may not be deprived of life, liberty, or property by the government "without due process of law." U. S. Constitution, Amendment XIV; 1983 Ga. Const., Art. I, Sec. I, Par. I. The Georgia Constitution further prohibits the passage of retroactive laws (Art. I, Sec. I, Par. X), i.e., "laws which injuriously affect the vested rights of citizens." *Recycle & Recover v. Bd. of Nat. Resources*, 266 Ga. 253 (2) (466 SE2d 197) (1996).

Due process requires that any licensing scheme enacted pursuant to the police power "provide sufficient objective criteria to control the discretion of the governing authority and adequate notice to applicants of the criteria for issuance of a license." *Levendis v. Cobb County*, 242 Ga. 592 (1) (250 SE2d 460) (1978). Due process also requires that one to whom a license is denied, or one whose valid license is being revoked or suspended, be given notice and an opportunity to be heard. See *Rose v. Grow*, 210 Ga. 664 (3) (82 SE2d 222) (1954); *Levendis v. Cobb County*, supra, 242 Ga. 592. See also OCGA §§ 3-2-3 (1) and 3-3-2 (a), and Marietta City Code §§ 8-20-160; 8-20-200 et seq. Both the adult entertainment occupation tax certificate (i.e., the adult entertainment license) and liquor license issued to each appellant expire annually on the last day of the year, and a license holder "renews" the licenses by filing an application for a license each year. Marietta City Code, § 170. Thus, the statutory scheme puts each appellant in the position of an applicant on an

---

[10] As set forth in fn. 2, the businesses continue to operate by means of an agreement among the parties. Consequently, appellants have not yet been denied a license under the amended ordinance since they have not applied for licenses after the effective date of the amended ordinance. We nonetheless address the issue because it is clear that, but for the parties' agreement, appellants would have applied for and would have been denied alcohol licenses, based on the amended ordinance, if they wished to continue operating as they have in the past.

annual basis. Since both state law and Marietta's ordinance provide an applicant with notice and an opportunity to be heard concerning the denial of an application, appellants will be afforded due process should their applications be denied.

7. In order to address appellants' contention that the 1995 amendment to Marietta's ordinance is an unconstitutional retrospective law, we must determine whether appellants have a vested property right in the renewal of their licenses because "[o]ur Constitution forbids passage of retroactive laws which injuriously affect the *vested* rights of citizens. [Cits.]" (Emphasis supplied.) *Recycle & Recover*, supra, 266 Ga. at 254. See also *Bullard v. Holman*, 184 Ga. 788, 792 (193 SE 586) (1937) ("a State constitution broadly prohibiting the passage of retroactive laws is to be restricted as to apply only to enactments affecting or impairing vested rights."). Generally, laws enacted pursuant to the police power for the public's protection may be modified without violating a constitutional prohibition against retrospective statutes. *Hayes v. Howell*, 251 Ga. 580 (2) (b) (308 SE2d 170) (1983). However, even modifications to police power enactments cannot impinge upon vested rights. *Recycle & Recover*, supra, 266 Ga. at 254.

> "To be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent. A divestible right is never, in a strict sense, a vested right." [Cit.] It has also been said that: "the term 'vested rights,' which cannot be interfered with by restrospective laws, means interests which it is proper for the state to recognize and protect and of which the individual cannot be deprived arbitrarily without justice." [Cits.]

*Hayes v. Howell*, supra, 251 Ga. 580, 584. A property interest protected by the due process clauses of the federal and state constitutions meets our definition of "vested rights." Accordingly, if appellants have a property interest in the renewal of their licenses that is protected by due process, then they have a vested right which cannot be affected adversely by a retrospective law. However, before there can be a property interest in the *renewal* of a license, there must be a property interest in the license itself. Accordingly, we examine the issue of whether appellants have a protectable property interest in their licenses.

8. In the past, the contention that one had a property right in a liquor license was summarily dismissed as without merit in light of the legislative declaration contained in OCGA § 3-3-1 that "[t]he businesses of . . . selling, handling, and otherwise dealing in or pos-

sessing alcoholic beverages are declared to be privileges in this state and not rights." See, e.g., *City of Mountain View v. Clayton County*, 242 Ga. 163 (249 SE2d 541) (1978); *Massell v. Leathers*, 229 Ga. 503 (192 SE2d 379) (1972); *Highnote v. Jones*, 198 Ga. 56 (31 SE2d 13) (1944). However, the "right/privilege" dichotomy is no longer availing since "relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.'" *Bell v. Burson*, 402 U. S. 535, 539 (91 SC 1586, 29 LE2d 90) (1971). See also *City of Atlanta v. Hill*, 238 Ga. 413, 414 (233 SE2d 193) (1977), where this Court noted that "the death knell has been sounded to the right-privilege distinction."

Now, "[t]o have a property interest . . ., a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U. S. 564, 577 (92 SC 2701, 33 LE2d 548) (1972). The court in *Roth* pointed out that property interests do not spring forth from the U. S. Constitution, but are created and defined by statutes, rules, or understandings "that secure certain benefits and that support claims of entitlement to those benefits." Id. at 577. A license which entitles the holder to operate a business and the continued possession of which "may become essential in the pursuit of a livelihood" is a protectable property interest under the Due Process Clause. *Bell v. Burson*, supra, 402 U. S. at 539. A law which provides that a license can be suspended or revoked only upon proof of certain contingencies "has engendered a clear expectation of continued enjoyment of [the] license absent proof of culpable conduct" and has thereby given the license holder a "legitimate 'claim of entitlement.' [Cit.]" *Barry v. Barchi*, 443 U. S. 55, 64, n. 11 (99 SC 2642, 61 LE2d 365) (1979). See also *Leone v. Town of New Shoreham*, 534 A2d 871 (R.I. 1987), where the Supreme Court of Rhode Island held that a license granted by government represented a property interest. Marietta's ordinance contains a list of grounds for the denial of an application for a liquor license (Marietta City Code § 8-8-2-130) and provides that a granted license is subject to revocation or suspension only upon the occurrence of specified events: conviction of a violation of the city code's liquor licensing provisions or any state or federal law, or revocation by the State of the license it issued for the manufacture or sale of alcoholic beverages. Marietta City Code § 8-8-2-220 (B) and (C). Since Marietta's city code sets forth the criteria which, if met, results in the issuance of a license, and specifies that a liquor license issued by the city can be suspended or revoked only upon a showing of cause, the city code created a protectable property interest in the license. *Barry v. Barchi*, supra, 443 U. S. at 64; *Richardson v. Town of Eastover*, 922 F2d 1152, 1156 (4th Cir. 1991). See also *Harris v. Entertainment Sys-*

*tems*, supra, 259 Ga. at 704, where this Court, while expressly declining to determine the nature of the licensee's property interest, concluded that the licensee had a sufficient property interest in the license to permit a court of equity to enjoin a criminal prosecution.[11]

9. Having determined that appellants have a vested right in the licenses issued them on an annual basis, we next consider whether each appellant has a vested right in continued re-issuance of its licenses. The same principle is applicable: the licensees must have more than a unilateral expectation that their licenses will be renewed year after year — they must have a legitimate claim of entitlement to license renewal (*Bd. of Regents v. Roth*, supra, 408 U. S. at 577) "based upon a state law, regulation, policy, or a mutually explicit understanding a governmental body puts forth. . . ." *Resolution Trust Corp. v. Town of Highland Beach*, 18 F3d 1536, 1544 (11th Cir. 1994). As stated earlier, state and local law expressly provide that issued liquor licenses expire at the end of the year and a licensee must apply annually to keep a license active. OCGA § 3-2-7; Marietta City Code § 8-2-2-200 (A). Adult entertainment occupation tax certificates issued by Marietta also have a life span of one year. City Code § 8-20-170. Faced with ordinances which expressly limit the duration of a license issued by Marietta, appellants assert they have a vested right to continue to offer adult entertainment and alcohol based on Marietta's past practice of annually issuing licenses to them.

By relying on the city's practice of renewing licenses, appellants are contending that they and the city have "a mutually explicit understanding" that the city will allow appellants to continue to operate "as is." See *Perry v. Sindermann*, 408 U. S. 593 (92 SC 2694, 33 LE2d 570) (1972). While Marietta has, for several years, issued licenses which annually authorized appellants to offer both alcohol and adult entertainment for the calendar year covered by the licenses (see fn. 1, supra), those licenses were of finite duration, and the city code expressly stated that the applicant for a liquor or an adult entertainment license had to meet annually the requirements for issuance set forth in the respective city code chapters. City Code §§ 8-8-2-130 (A) (10); 8-20-170. Compare *Cabo Distrib. Co. v. Brady*, 821 FSupp. 582, 597 (N. D. Cal. 1992), where the "certificate of label approval" was issued for "a potentially unlimited period of time . . . ." The annual issuance of the licenses could not create "a mutually explicit understanding" that licenses would annually be issued to appellants indefinitely, for nowhere does the city code provide that

---

[11] In *Harris v. Entertainment Systems*, supra, 259 Ga. 701 (2), this Court expressly noted that it made "no determination as to the nature of the property interest, only that it is sufficient to meet the [equity] exception set out in *Moultrie [Milk Shed v. City of Cairo]*, 206 Ga. 348 [(1) (57 SE2d 199) (1950)]."

the licensing requirements will remain static. See *Triple A Svcs. v. Rice*, 545 NE2d 706 (Ill. 1989), where the Supreme Court of Illinois held that long and continued operation of their businesses did not vest mobile food vendors licensed by the City of Chicago with a property interest in the continuation of their business. See also *Ficarra v. Dept. of Regulatory Agencies*, 849 P2d 6 (Colo. 1993), where the Supreme Court of Colorado noted that one who holds a license that expires annually assumes the risk it may not be renewed. Compare City Code § 8-8-2-240 (A), which exempts the holder of a Marietta liquor license from certain licensing requirements (residency, distance, location, parking, and type of building structure) so long as the licensee continues to remain in compliance with those requirements as they existed at the time the licensee initially received the liquor license.

> In organized society, every [person] holds all he possesses, and looks forward to all he hopes for, through the aid and under the protection of the laws; but as changes of circumstances and of public opinion, as well as other reasons affecting the public policy, are all the while calling for changes in the laws, and as these changes must influence more or less the value and stability of private possessions, and strengthen or destroy well-founded hopes, and as the power to make very many of them could not be disputed without denying the right of the political community to prosper and advance, it is obvious that many rights, privileges, and exemptions which usually pertain to ownership under a particular state of the law, and many reasonable expectations, cannot be regarded as vested rights in any legal sense.

Cooley, Constitutional Limitations, pp. 746-747 (Vol. 2) (8th ed. 1927). The city code makes it clear that the Marietta licensees before us do not have a vested right in the law never changing, and are not exempt from the exercise of the city's police power by its elected officials to further an important governmental interest. In light of the above, "the substantial reliance placed by [appellants] upon the renewal of their licenses, by constitutional standards, amounts only to 'a unilateral expectation,' *Roth*, [supra], 408 U. S. at 577 . . ." of renewal. *Ficarra v. Dept. of Regulatory Agencies*, supra, 849 P2d at 20. Because appellants did not have a legitimate claim of entitlement to continued re-issuance of their annual licenses, they did not have a protectable property interest in their renewal. Compare *Bundo v. Walled Lake*, 238 NW2d 154 (Mich. 1976), and *Bosselman, Inc. v. State of Nebraska*, 432 NW2d 226 (Neb. 1988), where the Michigan and Nebraska Supreme Courts ruled that a licensee had a constitu-

tionally-protected interest in obtaining a renewal of a liquor license.

10. Relying on *Clairmont Dev. Co. v. Morgan*, 222 Ga. 255 (149 SE2d 489) (1966), appellants claim they acquired vested rights to the continued re-issuance of alcohol and adult entertainment licenses for the same location because each of them spent substantial sums of money in reliance upon the initial issuance of the licenses. It is a tenet of zoning law that a property owner may acquire a vested right under a zoning ordinance which precludes retroactive application of zoning ordinances:

> "A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations." 3 Rathkopf, Law of Zoning and Planning, § 57-3. . . .

*Barker v. County of Forsyth*, 248 Ga. 73, 75-76 (281 SE2d 549) (1981). While we have acknowledged the existence of "constitutionally protected vested zoning rights" of a property owner, under certain conditions, so as to preclude retroactive application of a *zoning* ordinance (e.g., *Corey Outdoor Advertising v. Bd. of Zoning Adjustment*, 254 Ga. 221 (4) (327 SE2d 178) (1985)), the same is not applicable to *licenses* to conduct a business. In *Cobb County v. Peavy*, 248 Ga. 870 (1) (a) (286 SE2d 732) (1982), this Court distinguished between a business license and a building permit, holding that issuance of the latter, "a device for ensuring compliance with zoning ordinances" created a vested right in existing zoning ordinances, but that procurement of a business license, "typically not a device for ensuring compliance with zoning ordinances[,]" did not bestow vested rights upon the holder. We continue to adhere to the distinction and conclude that appellants' expenditure of funds in reliance upon the city's annual issuance of liquor and adult entertainment licenses to them did not endow them with a vested right to remain in business under the licensing regulations in existence at the time appellants received their initial licensing. Those who hold licenses that expire annually act at their peril and assume the risk that their licenses might not be renewed notwithstanding they have "committed their lives and their capital to building their businesses" which need licenses to operate. *Ficarra v. Dept. of Regulatory Agencies*, supra, 849 P2d at 18. Appellants must meet the requirements of the ordinance in effect at the time they file their annual applications for licenses. Cf. *Recycle &*

*Recover*, supra, 266 Ga. at 255 (the filing of a "then-proper" application gives the applicant a vested right to issuance of the permit under the law as it existed at the time of the application).

11. Since appellants do not have a vested right to renewal of their licenses, their assertions concerning unconstitutional application of retrospective laws, unconstitutional impairment of contract, and an unconstitutional taking of property, all of which require the presence of a vested right/property interest, must fail.

12. The mayor and city council members are not individually liable as there is no evidence they acted oppressively, maliciously, corruptly or without authority of law so as to divest themselves of legislative immunity. OCGA §§ 36-33-1; 51-1-20.

13. In light of the above, appellant Cyprus Lounge is not entitled to a writ of mandamus requiring the City to issue to it adult entertainment and liquor licenses for the same location.

*Judgment affirmed. All the Justices concur, except Sears, J., who dissents.*

SEARS, Justice, dissenting.

In this appeal we are once again called upon to grapple with questions regarding the regulation of nude dancing. Although the majority implies in Division 10 that, because of the appellants' substantial expenditures in their businesses, they would have acquired vested rights if the City of Marietta had chosen to regulate adult entertainment by way of a zoning ordinance, the majority holds that the appellants acquired no right to continue their businesses since the city chose to regulate adult entertainment pursuant to a licensing scheme. I disagree with this holding and therefore dissent.

The majority relies largely on Division 1 (a) of *Cobb County v. Peavy*[12] for its holding. I find, however, that that division of *Peavy* is inapposite to this case. The contention addressed in Division 1 (a) of *Peavy* was whether the issuance of a business license in and of itself, without regard to the property owner's investment in the business, was sufficient to create a vested right. Here, of course, the issue is whether the appellants have acquired a vested right to operate their businesses because they obtained the appropriate licenses pursuant to the adult entertainment ordinance and because they made substantial expenditures to put the businesses into operation. Furthermore, although we held in *Peavy* that the fact that the appellant had obtained a business license was not enough, by itself, to give her a vested right, we did not hold that this factor was dispositive of the appeal. Instead, we addressed whether Peavy had a vested right in

---

[12] 248 Ga. 870, 872 (1) (a) (286 SE2d 732) (1982).

her lawful, pre-existing use based upon the expenditures she had made.[13] *Peavy* thus implicitly stands for the proposition that a person operating a business can obtain a vested right based upon expenditures even if that person cannot acquire vested rights based upon the business license.

Moreover, I find no rational reason to treat *an adult entertainment ordinance like the one in this case* any differently from a zoning ordinance for purposes of determining vested rights. First, *Peavy* itself acknowledged that "the general aim of both zoning and licensing regulations is the promotion of the general welfare." Second, zoning regulations, like licensing regulations, are subject to change at any time if the local government believes that the change will promote the general welfare of the community. Third, the adult entertainment ordinance in this case is in fact a combination zoning-licensing scheme, containing numerous traditional zoning features. Finally, here, unlike many licensing regulations, including the one at issue in the Colorado case on which the majority relies,[14] the adult entertainment ordinance was amended so as to entirely preclude the businesses that the appellants had been operating — lounges featuring nude dancing.

Because the adult entertainment ordinance at issue is a combination zoning-licensing scheme, because the ordinance's amendment precludes a pre-existing use of the property, and because zoning and licensing schemes share a common goal of furthering the general welfare of the public, I would apply to this case the well-established principle that the termination of a pre-existing use of property that does not constitute a nuisance and has not been abandoned generally is confiscatory unless there is a reasonable amortization period in which to bring the use to a close.[15] Under that test, I believe that the trial court erred in granting summary judgment to the appellees. I therefore dissent.

DECIDED MARCH 17, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*O. Jackson Cook, Groover & Childs, Denmark Groover, Jr.,* for appellants (case no. S96A1494).
*Steven M. Youngelson,* for appellants (case no. S96A1496).

---

[13] *Peavy,* 248 Ga. at 872.
[14] See *Ficarra v. Dept. of Regulatory Agencies*, 849 P2d 6 (Colo. 1993).
[15] 4 Ziegler, Rathkopf's The Law of Zoning and Planning, § 51.01[2][a] (4th ed.); 2 Ziegler at 17B.02 [3] [I]; 4 Ziegler at 51B.05 [1]; *Ebel v. City of Corona*, 767 F2d 635, 639 (3) (9th Cir. 1985) (60-day amortization period for adult bookstore was found not to be satisfactory in view of length of lease and financial investment in bookstore).

*Alan I. Begner, Cory G. Begner,* for appellants (case no. S96A1497).

*Haynie & Litchfield, Douglas R. Haynie, Emilie K. Petrovich, Barnhart, O'Quinn & Williams, Michael A. O'Quinn, Robert K. Haderlein,* for appellees.

*Michael J. Bowers, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General, W. Wright Banks, Assistant Attorney General,* amicus curiae.