S03A1359 I.D.K., INC. et al. v. FERDINAND et al.
(592 SE2d 673)

BENHAM, Justice.

This is an appeal from a judgment upholding the constitutionality of a Fulton County ordinance requiring any person working at an adult entertainment establishment that serves alcohol, including dancers, waitresses, bartenders, dishwashers, and janitors, to obtain a permit from the Alcohol and Business Tax Division of the Fulton County Tax Commissioner's Office. The fee for an initial permit under the ordinance is $350, which includes $300 for the permit and $50 for an investigation fee. The permit must be renewed annually for a fee of $50. Prior to enactment of this ordinance, permits cost $20 per year and were handled exclusively by the police department. In

---

making the changes, the County relied on testimony given at a public hearing, studies of other jurisdictions, and evidence of problems within its own jurisdiction. The purpose of the ordinance, as stated in § 18-76, is to regulate adult entertainment establishments so as to reduce criminal activities and to promote the protection and development of neighborhoods.

Appellants are adult entertainment establishments and adult entertainment establishment employees who filed a complaint in Fulton County Superior Court in 2002 to obtain an injunction against enforcement of the ordinance by the County and declaratory judgment that the ordinance is unconstitutional. Appellants were granted a temporary injunction which halted the collection of the $300 permit fee but allowed collection of the $50 renewal fee. After briefs regarding the injunction were filed, the trial court issued a final judgment holding the ordinance constitutional and denying the relief sought by appellants. We are presented on appeal with two questions: whether the ordinance is unconstitutional as a content-based prior restraint on protected speech, and whether the ordinance violates constitutional guarantees of equal protection.

1. In considering whether legislation which impacts protected expression is constitutional, we must first determine whether the legislation is content-based or content-neutral because that determination controls the level of scrutiny to be applied.

> To determine what level of scrutiny applies to the ordinance at issue here, we must decide "whether the State's regulation is related to the suppression of expression." [Cits.] If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the "less stringent" standard from [*United States v. O'Brien*, 391 U. S. 367 (88 SC 1673, 20 LE2d 672) (1968)] for evaluating restrictions on symbolic speech. [Cits.] If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard. [Cit.]

*City of Erie v. Pap's A.M.*, 529 U. S. 277, 289 (120 SC 1382, 146 LE2d 265) (2000).

> The principal inquiry in determining whether a legislative act is content-neutral is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes

unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." [Cit.] An ordinance designed to combat the undesirable secondary effects of sexually explicit businesses is content-neutral. [Cits.] Before enacting an ordinance to combat undesirable secondary effects, a legislative body is required to consider specific evidence of the undesirable secondary effects that it reasonably believes relevant to the problems it seeks to address by passing the ordinance. [Cit.]

*Goldrush II v. City of Marietta*, 267 Ga. 683, 690 (4) (482 SE2d 347) (1997). The evidence before the trial court established the purpose of the ordinance is to combat negative secondary effects associated with adult entertainment establishments, and that the county commission, before enacting the ordinance for that purpose, considered studies from other jurisdictions and conducted a public hearing at which evidence was presented regarding the negative secondary effects on neighborhoods of adult entertainment businesses. That being so, the trial court was authorized to find, as it did, that the ordinance is content-neutral.

In Georgia, the standard applicable to content-neutral legislation is that stated in *Paramount Pictures Corp. v. Busbee*, 250 Ga. 252, 256 (297 SE2d 250) (1982), where this Court held legislation which impacts protected expression "should be upheld if it furthers an important government interest; if the government interest is unrelated to the suppression of speech; and if the incidental restriction of speech is no greater than is essential to the furtherance of that interest." The evidence presented to the trial court in the present case established the same factors we found to satisfy that test in *Goldrush II v. City of Marietta*, supra, 267 Ga. at 692:

> [T]he stated purpose of the ordinance . . . was to control criminal behavior and prevent undesirable community conditions. [There is] a substantial government interest in "attempting to preserve the quality of . . . life." [Cit.] The "reduction of criminal activity and prevention of the deterioration of neighborhoods are important government interests." [Cit.] . . . The . . . desire to preserve the quality of . . . life and [the] attempt to reduce crime and prevent neighborhood deterioration . . . are important government interests unrelated to the suppression of speech. [Cit.] Finally, the ordinance's application is sufficiently narrowly tailored because it is limited to the modes of expression implicated in the production of negative secondary effects –

those establishments that provide alcohol and entertainment requiring an adult entertainment license – thereby exempting mainstream performance houses, museums, or theaters.

As we did in *Goldrush II*, we conclude that the trial court was correct in upholding the ordinance against the assertion that it was not a proper exercise of the county's police power.

However, a factor in the present case which was not involved in *Goldrush II* is the question of whether the permit fee constitutes an unconstitutional prior restraint. In *Airport Book Store v. Jackson*, 242 Ga. 214, 220 (248 SE2d 623) (1978), this Court upheld a licensing scheme which impacted businesses which exercised First Amendment rights, holding that a government "may enact an ordinance, for legitimate purposes, requiring those who would exercise their freedom of speech to obtain a license in advance." In so doing, this Court noted that the tax involved there was not a revenue measure, but a reimbursement of costs of administering the licensing scheme. Fees intended for that purpose have been held by the U. S. Supreme Court to withstand constitutional muster in *Cox v. New Hampshire*, 312 U. S. 569 (61 SC 762, 85 LE 1049) (1941), relied upon by this Court in *Airport Book Store*, supra.

Conceding that such fees can pass constitutional muster, appellants contend that the fee involved here is in excess of the amount necessary to administer and enforce the permitting scheme and is, therefore, an impermissible tax on the exercise of free speech. At the hearing before the lower court, however, Fulton County presented evidence from representatives of the police department and the tax commissioner's office that the fees charged under the ordinance were just adequate to cover the expenses of administering and enforcing the permitting scheme. Witnesses testified the police department expends resources in checking every applicant against the Georgia Crime Information Center database, checking every applicant against its own database, and conducting field examinations to ensure compliance with the permit requirement. Other witnesses testified the tax commissioner's office was required to add staff to administer the program and was required to create and maintain a new database to track the permits and applicants. Although appellants presented testimony suggesting that administering the program did not require as much money as the county was collecting, the evidence presented by the county authorized the trial court to conclude that the fees charged were not greater than necessary to administer and enforce the permit program. Accordingly, we find no error in the trial court's failure to find the fee program unconstitutional as a prior restraint on protected expression.

2. Appellants contend they are denied equal protection of the law because no separate employee permit is required for employees of establishments which serve alcohol but do not feature adult entertainment. However,

> [t]he United States Supreme Court has held that states and local governments may regulate adult entertainment establishments differently than other business establishments if the regulation is content-neutral and aimed at ameliorating secondary effects caused by such establishments. See *Young*[ *v. American Mini Theatres*, 427 U. S. 50, 70-71 (96 SC 2440, 49 LE2d 310) (1976)] ("The State may legitimately use the content of these [motion pictures] as the basis for placing them in a different classification from other motion pictures."). . . .

*Mitchell v. Comm. on Adult Entertainment Establishments of State of Del.*, 10 F3d 123, 144, fn. 22 (3rd Cir. 1993). See also *Thorburn v. Austin*, 231 F3d 1114, 1122 (8th Cir. 2000) ("The appellants' equal protection argument is premised on their argument that the ordinance is content-based. As we have already determined that the . . . ordinance is content-neutral, this argument necessarily fails."); *Tily B., Inc. v. City of Newport Beach*, 69 Cal. App. 4th 1, 25 (81 Cal. Rptr. 2d 6) (1998) ("State and local governments may regulate adult businesses differently than others, as long as the regulations are content neutral and aimed at curtailing the secondary effects associated with such businesses, which they are here."). Here, as in *Thorburn v. Austin*, supra, appellants' equal protection claim is based on an assertion that the ordinance is content-based. That being so, our affirmance above of the trial court's holding that the ordinance in this case is content-neutral and is aimed at combating undesirable secondary effects associated with adult entertainment establishments controls appellants' equal protection argument adversely to them.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 2, 2004.

*Zell & Zell, Glenn Zell*, for appellants.
*Steven E. Rosenberg*, for appellees.