**R.B. MIXON, Plaintiff–Appellee,**

v.

**ONE NEWCO, INC. (Now General Chemical Corporation), a Delaware Corporation, Defendant–Appellant.**

No. 88–8301.

United States Court of Appeals, Eleventh Circuit.

Jan. 17, 1989.

G.L. Dickens, Jr., Dickens & Burns, PC, Milledgeville, Ga., for defendant-appellant.

James C. Marshall, Mercer Law School, Macon, Ga., Joseph A. Boone, Boone, Scott & Boone, Irwinton, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

This is an appeal from the judgment of the United States District Court for the Middle District of Georgia granting mineral rights to the surface owner of a tract of land under the authority of OCGA § 44–5–168. The essential facts of this case are undisputed. On March 28, 1964, the appellee, R.B. Mixon, conveyed by recorded instrument all mineral rights on a certain parcel of land in Wilkinson County, Georgia, to Allied Chemical Corporation ("Allied"). Mixon retained title to the surface land, which remained unimproved and unfenced from the date of the conveyance to the filing of this suit. Allied worked its mineral rights at some point during the seven-year period between the time of the conveyance and 1971. However, neither it nor its successor, the appellant, General Chemical Corporation (formerly known as One Newco, Inc.), a Delaware corporation (General Chemical), worked or attempted to work its rights at any time during the fourteen-year period from 1972 to 1986. The parties stipulated that neither the appellant nor Allied was a licensed mining operator, nor did either ever pay taxes on the mineral rights.

In 1975 the Georgia General Assembly enacted Ga. Laws 1975, p. 725 § 1, now codified as OCGA § 44–5–168 (1975). The statute provides in pertinent part:

(a) Whenever mineral rights are conveyed or whenever real property is conveyed in fee simple but the mineral rights to such property are reserved by the grantor, the owner of the real property in fee simple or his heirs or assigns may gain title to such mineral rights by adverse possession if the owner of the mineral rights or his heirs or assigns have neither worked nor attempted to work the mineral rights nor paid any taxes on them for a period of seven years since the date of the conveyance and for seven years immediately preceding the filing of the petition provided for in subsection (b) of this Code section.

\* \* \* \* \* \*

(f) Nothing in this Code section shall apply to a lease for a specific number of years nor to an owner of mineral rights who has leased the mineral rights in writing to a licensed mining operator ...

On October 6, 1986, Mixon filed a complaint in the Wilkinson County Superior Court for a declaratory judgment, claiming title to the minerals in dispute pursuant to OCGA § 44–5–168. Following removal to the federal district court, the case was tried before a jury which found in favor of Mixon. General Chemical appealed following the district court's entry of judgment in April, 1988.

The appellant raises three issues on appeal. First, it claims that the trial court erred in holding that OCGA § 44–5–168 does not require the surface owner to take affirmative steps to acquire title to the underlying minerals. Second, it urges that the district court erroneously construed the statute in favor of the surface owner despite the fact that the jury found that the appellant or its predecessor had worked its mineral rights within the seven years immediately following the conveyance. Third, it contends that the statute's exclusion of fixed duration leases and leases to

certain licensed mining operators violates its equal protection rights. For the reasons stated below, we find these assignments of error are without merit and affirm the judgment of the district court.

Prior to the Georgia legislature's enactment of OCGA § 44–5–168 in 1975, the prescriptive rights of surface owners or landowners against the holders of mineral interests was governed by the rule set forth in *Brooke v. Dellinger*, 193 Ga. 66, 17 S.E.2d 178 (1941): "When mineral rights have been conveyed separately from the surface, title to such minerals will not be lost by nonuser. Neither will it be lost by prescription, where there is no adverse user of the minerals themselves, as distinguished from the surface." 193 Ga. at 73, 17 S.E.2d at 182. The General Assembly's enactment of OCGA § 44–5–168, however, abrogated the *Brooke* rule by providing for forfeiture of mineral rights to the fee owner where the mineral owner neither worked or attempted to work, nor paid taxes on such rights, during the requisite seven-year period. *See Milner v. Bivens*, 255 Ga. 49, 50 n. 2, 335 S.E.2d 288, 290 n. 2 (1985); *Hayes v. Howell*, 251 Ga. 580, 582, 308 S.E.2d 170, 174 (1983).

General Chemical concedes that the statute does not require the surface owner to make adverse use of the minerals themselves in order to gain title. It argues, however, that OCGA § 44–5–168 is still an "adverse possession" statute and as such requires the surface owner to show at least some affirmative acts of dominion over the land under which the minerals lie. In support of its argument, General Chemical notes that the words, "adverse possession" are used in the caption of OCGA § 44–5–168 and in the statute itself, as well as in Georgia Supreme Court cases interpreting the statute.[1] *See Dubbers–Albrecht v. Nathan*, 257 Ga. 111, 356 S.E.2d 205 (1987); *Larkin v. Laster*, 254 Ga. 716,

334 S.E.2d 158 (1985); *Johnson v. Bodkin*, 241 Ga. 336, 247 S.E.2d 764 (1978); *Nelson v. Bloodworth*, 238 Ga. 264, 232 S.E.2d 547 (1977).

▆ Notwithstanding these references to "adverse possession," our analysis of OCGA § 44–5–168 and Georgia cases construing it convinces us that the statute actually is a "lapse" statute rather than a traditional "adverse possession" law. While the typical adverse possession statute focuses on the steps the adverse possessor must take in order to quiet title against the true owner, a "lapse" or "limitations" statute emphasizes what the true owner (here, the owner of the mineral rights) has done or failed to do so as to preclude him from asserting or retaining title. OCGA § 44–5–168 does not by its language require the surface owner to assert any acts of dominion over the surface estate or the minerals below. He need only allege that he has a deed to the property in issue, that the mineral rights have been severed from the fee simple estate, and that the requirements of nonuse and nonpayment of taxes by the owner of the mineral rights under subsection (a) have been satisfied. OCGA § 44–5–168(b). Moreover, the Georgia Supreme Court has indicated that OCGA § 44–5–168 is a lapse statute as opposed to one requiring adverse possession. *See, e.g., Dubbers–Albrecht v. Nathan, supra*, 257 Ga. at 112, 356 S.E.2d at 207 ("[T]o retain his interest in the mineral rights, the owner must attempt to work or work the mineral rights or return the property for and pay ad valorem taxes."); *Hayes v. Howell, supra*, 251 Ga. at 583–84, 308 S.E.2d at 174–75 (noting similarity between OCGA § 44–5–168 and the Indiana Dormant Mineral Interests Act, a lapse statute approved by the United States Supreme Court); *Hinson v. Loper*, 251 Ga. 239, 240, 304 S.E.2d 722, 723 (1983) ("[I]t might be more accurate to say that

---

**1.** The caption to OCGA § 44–5–168 reads: "Presumption of *adverse possession* of mineral rights under certain conditions; procedure to obtain title on basis of *adverse possession;* applicability of this Code section to leases for term of years or to licensed mining operators." (emphasis added). Subsection (a) of the statute provides

in relevant part that the fee owner "may gain title to such mineral rights by *adverse possession*" if the mineral owner has neither worked nor attempted to work the mineral rights, nor paid taxes on them, during the applicable time period. (emphasis added).

under [OCGA § 44-5-168] the owner of the mineral rights loses them by nonuse plus nonpayment of taxes, as opposed to losing such rights by adverse possession of the fee simple owner.").

General Chemical mistakenly relies on *Larkin v. Laster, supra,* to bolster its claim that a surface owner seeking relief under OCGA § 44-5-168 still must comply with traditional adverse possession requirements. The *Larkin* court held only that "[p]ossession is the key element in an action for adverse possession," and went on to discuss the possession factor in the context of OCGA § 44-5-160, Georgia's statute governing title by prescription, not OCGA § 44-5-168. 254 Ga. at 718, 334 S.E.2d at 159. The court stated that the statutory preamble to the Act creating OCGA § 44-5-168 establishes "an *additional* method for obtaining good title to property by adverse possession." *Id.* (emphasis added). *Larkin* stands only for the proposition that the "additional method" for obtaining good title is limited to the fee owner or his heirs or assigns. *Id.* It is silent as to any necessity for adverse use or any other affirmative acts of dominion over the land or the minerals thereunder. OCGA § 44-5-168 therefore provides the surface owner with an alternative means of acquiring title to the minerals, separate and distinct from the type of traditional adverse possession embodied in OCGA § 44-5-160.

Furthermore, requiring the surface owner to comply with these traditional adverse possession prerequisites would not serve the policy objective of providing the mineral rights owner with notice of others claiming an interest to the rights. Where the property is an unimproved, unfenced tract, as here, OCGA § 44-5-165 stipulates that "[a]ctual possession of lands ... be evidenced by enclosure, cultivation, or any use and occupation of the lands which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another." The Georgia Supreme Court concluded in *Brooke v. Dellinger, supra,* however, that adverse use of the minerals themselves was the only use truly sufficient to put the mineral rights owner on notice of any adverse claim to those rights. 193 Ga. at 173, 17 S.E.2d at 182. As stated earlier, OCGA § 44-5-168 supersedes the *Brooke* rule. Rather than requiring notorious use or occupation of either the lands or its underlying minerals, OCGA § 44-5-168 eschews affirmative acts and contains a built-in, statutory notice to the mineral rights owner that he will lose his rights through nonuse or nonpayment of taxes. The self-executing feature of this statute is similar to the Indiana Dormant Mineral Interests Act, which the United States Supreme Court found to provide sufficient notice to mineral owners that their property rights would extinguish after twenty years' nonuse.[2] *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

■ The second argument advanced by General Chemical is that the statute should be read to preserve the interest of an owner of mineral rights who either works or attempts to work his mineral rights, or pays taxes on those rights, at any time during the seven-year period immediately following the date of the conveyance. Because the jury found by special verdict that General Chemical or its predecessor in title had in fact mined its minerals during this period, the appellant claims that the surface owner is barred from claiming title to

---

**2.** In *Texaco,* the Supreme Court observed that "[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." 454 U.S. at 532, 102 S.Ct. at 793, 70 L.Ed.2d at 752. The Indiana Dormant Mineral Interests Act, unlike the Georgia statute, was an automatic lapse statute. However, it contained a two-year grace period from the date of its enactment permitting the owners of potentially lapsed mineral interests to preserve their rights by filing a statement of claim. The Court held this two-year period to provide mineral owners with ample time to familiarize themselves with the statute's terms. Similarly, the appellant in this case had at least seven years in which to maintain its interest. Lawsuits brought under OCGA § 44-5-168 were not ripe until 1982, seven years after the statute was enacted. *See, e.g., Hinson v. Loper, supra,* 251 Ga. at 239, 304 S.E.2d at 723; *Johnson v. Bodkin, supra,* 241 Ga. at 336, 247 S.E.2d at 764; *Nelson v. Bloodworth, supra,* 238 Ga. at 267, 232 S.E.2d at 549.

the minerals. Such a construction, however, is unsupported by the language of the statute. OCGA § 44–5–168 simply provides that the surface owner may recover where he can show that the mineral owner "[has] neither worked nor attempted to work the mineral rights nor paid any taxes on them for a period of seven years *since the date of the conveyance* and for seven years immediately preceding the filing of the petition." (emphasis added).

The word "since" in this context does not necessarily imply "immediately following." As an adverb, it conveys a variety of meanings, including "from then until now," "at some or any time between then and now," or "before the present time." As a preposition, it might imply "during the period between (the time given) and now" or "subsequently to." *See* WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE, COLLEGE EDITION (1966). While it is also true that "since" can mean "continuously or without exception or interruption from (the time given) and now," *see id.,* such an interpretation is unlikely given the wording in the statute. The General Assembly drafted OCGA § 44–5–168 so as to require nonuse and nonpayment during the seven-year period *immediately preceding* the filing of the petition. The legislature clearly was aware of the specificity of this phraseology and logically would have included the parallel term "immediately following" rather than "since" had it so intended. Moreover, its use of the indefinite article in its reference to "*a* period of seven years" as opposed to "*the* period" indicates that any seven-year period of nonuse or nonpayment of taxes following the date of conveyance would suffice, *e.g.,* from 1972 to 1979, or from 1973 to 1980.

Why the legislature would choose a floating seven-year period as the first of the periods in the statute is not immediately clear. We are persuaded, however, by Mixon's argument that the floating period was added to insure that at least seven years of lapse would occur "since" the date of the conveyance and before the filing of the petition. The statute on its face does not prohibit overlap between the two required seven-year periods, although the parties do not raise this as an issue on appeal.

The meaning of the word "since" in the context of this statute has not previously been addressed in the Georgia courts.[3] However, to adopt the appellant's interpretation would frustrate the legislative intent behind the statute, which was to "encourage the use of the state's mineral resources and the collection of taxes," or alternatively, "to encourage the use of land free of interference by the holders of mineral rights who neither use them nor pay taxes on them." *Hayes v. Howell, supra,* 251 Ga. at 585, 308 S.E.2d at 176. Under the appellant's reasoning, the mineral rights owner could mine the minerals or pay taxes on them just once during the seven-year period immediately following the date of the conveyance and then let them lie dormant indefinitely thereafter. Such a reading clearly would be inconsistent with the legislature's desire that mineral rights either be used or forfeited.

■ General Chemical finally contends that even if the district court correctly construed the statute, the exclusion of fixed duration leases and leases to certain licensed mining operators contained in OCGA § 44–5–168(f) violates the Equal Protection Clause of the Fourteenth Amendment. We disagree.

When fundamental rights or suspect classifications are not at issue, a legislative classification does not deny equal protection if it furthers a legitimate state policy.

3. Prior cases involving OCGA § 44–5–168 have merely mentioned the "applicable" or "requisite" seven-year period without any reference as to what time frame that period embraces. *See, e.g., Dubbers–Albrecht v. Nathan, supra,* 257 Ga. at 111, 356 S.E.2d at 206; *Nelson v. Bloodworth, supra,* 238 Ga. at 267, 232 S.E.2d at 549. In *Nelson,* the property in question was conveyed in 1941. Although some mining occurred from 1941–42, there had been no activity during the thirty years preceding the plaintiff's suit. The court held that the action was premature, but noted that the evidence showed nonuse and nonpayment of taxes for the "requisite" seven years, thus supporting the argument that nonuse or nonpayment need not occur during the *first* seven years following the date of conveyance.

Where, as here, the statute's classification scheme involves solely economic interests, the proper standard of review is whether the classification bears a rational relationship to a legitimate governmental purpose. *Pennell v. City of San Jose*, 485 U.S. ——, 108 S.Ct. 849, 859, 99 L.Ed.2d 1, 16 (1988); *Truax v. Corrigan*, 257 U.S. 312, 337, 42 S.Ct. 124, 131, 66 L.Ed. 254, 265 (1921).

Applying the "rational relationship" test in *Texaco, Inc. v. Short, supra*, the Supreme Court found that the Indiana Dormant Mineral Interests Act's exemption of certain owners of multiple mineral interests did not violate equal protection. Justice Stevens, writing for the majority, noted that the State had an "unquestionably legitimate" interest in encouraging single ownership of multiple interests because such owners would be more likely to engage in mining activity. 454 U.S. at 539–40, 102 S.Ct. at 797–98, 70 L.Ed.2d at 567. Unlike the Supreme Court in *Texaco*, we do not have the benefit of a state supreme court decision on the constitutionality of the exemption in the Georgia statute. However, we surmise that the exceptions contained in OCGA § 44–5–168(f) serve several "unquestionably legitimate" state interests. First, the legislature would be more likely to favor ownership of mineral rights in the form of fixed duration leases in light of the problems Georgia has experienced with perpetual leases. *See* Rehberg and McLaughlin, *The Implied Duty to Mine in Georgia*, 20 Ga. St. B.J. 216 (1984). Second, exempting those who lease to licensed mining operators protects the mining industry's legitimate needs, such as the continuing ability to attract potential investors. Moreover, protecting those who fall into these categories increases the likelihood that the mineral rights will be owned by an entity that actually will exploit them and pay taxes on them, two purposes that inhere in the statute. *See Hayes v. Howell, supra*, 251 Ga. at 585, 308 S.E.2d at 176. Given the General Assembly's specific intention to protect these groups by excluding them from the code section, *see Hinson v. Loper, supra*, 251 Ga. at 240, 304 S.E.2d at 723, and the possible reasons for their exclusion as mentioned herein, we hold that the district court did not err in denying the appellant's equal protection claim.

The judgment of the district court is AFFIRMED.