The Honorable Steven L. Breedlove State Representative Post Office Box 893 Greenwood, Arkansas 72936
Dear Representative Breedlove:
I am writing in response to your request for an opinion on whether House Bill 2741, introduced in the now-concluded 2007 Regular Session, is constitutional. That bill was entitled "A n Act to Quite Title in Abandoned Mineral Interests in the Surface Estate Owner; and for Other Purposes." The bill authorizes a person owning the "surface estate" in land to file a petition in circuit court to "quiet title" to, or "merge" the surface estate into the severed mineral estate under certain circumstances.
RESPONSE
As an initial matter, before discussing any constitutional issues, I cannot determine the precise operation of House Bill 2741. Specifically, I cannot determine from a review of proposed § 18-60-1002(a)(4) the proof the petitioner must present to "show a prima facie right and title to the severed mineral estate. . . ." It appears from the language employed that this portion of the bill may require a petitioner to show some type of ownership interest in the minerals (either by some claim of record title to the minerals, or adverse possession by actual production of the minerals), separate and apart from ownership of the surface estate. Conversely, the bill might be interpreted as allowing a surface owner to show a "prima facie" right and title to the severed mineral interests by submitting proof of ownership and payment of taxes on the surface estate alone and the mere inability to locate the record owner of the minerals. Again, I cannot determine the proper interpretation from the language used. If the former interpretation is correct and the petitioner is required to show a prima facie ownership interest in the severed mineral estate, it *Page 2 
does not appear that the bill would result in any significant change in current law. If the latter interpretation is correct and the intention of the bill is to allow a surface owner to prove a "prima facie" right and title to the minerals through ownership and payment of taxes on the surface alone, in my opinion the bill is unconstitutional.
Under either interpretation, in my opinion other aspects of the bill are constitutionally deficient because they provide for only constructive notice by publication to certain unknown but readily ascertainable interested parties. These parties include lienholders and perhaps former record holders whose interests may have been extinguished by an invalid tax forfeiture sale. In my opinion this fact renders the bill constitutionally suspect under procedural Due Process analysis despite any interpretational issues discussed above.
DISCUSSION
House Bill 2741 would add three new statutes to the Arkansas Code. The first proposed statute, and the first subsection of the second proposed statute (subsection (a)), relate to the filing and contents of the petition the act authorizes. These proposed new sections provide as follows:
 18-60-1001. Quiet title action to merge surface estate and mineral estate.
 Any person or entity who owns the surface estate to land that has a severed mineral estate recorded with a separate owner than the surface estate may have the person or entity's title to the surface estate merged into the severed mineral estate confirmed and quieted by proceeding in the manner provided in this subchapter.
 18-60-1002. Petition.
 (a) A person or entity that seeks to merge its title to the surface estate with a severed mineral estate shall file in the office of the clerk of the circuit court of the county in which the surface estate is situated a petition that includes: *Page 3 
 (1) A description of the surface estate and the severed mineral estate that is the cause of the action;
 (2) Evidence that the petitioner has owned title to the surface estate continuously for more that seven (7) years;
 (3) Evidence that the petitioner has continuously paid the taxes on the surface estate for the alleged seven (7) years of continuous ownership; and
 (4) Facts that show a prima facie right and title to the severed mineral estate in the petitioner and that there is no adverse owner to the severed mineral estate or that no owner or record to the severed mineral estate can be located.
 (5) The petition under this section shall describe the surface estate and summon all persons or entities that claim any interest in the severed mineral estate to appear in the circuit court and show cause why the title of the owner of the surface estate should not be merged with the severed mineral estate and why the petition to quiet title under this section should not be granted.
(Emphasis added).
Before discussing the constitutionality of the bill, I am somewhat uncertain as to the operation of these provisions, particularly subsection (a)(4) above, requiring the petitioner to show a "prima facie right and title" to the minerals. Some explanation is necessary.
It appears that this language has been largely borrowed from an existing statute, A.C.A. § 18-60-502 (prior to its amendment in 2007), which governs quieting title to land generally. That statute and the subchapter in which it appears do not have specific reference to minerals, which, when severed, are an interest in land separate and apart from the surface estate. See, e.g., Skelly Oil Company v.Johnson, 209 Ark. 1107, 194 S.W.2d 425 (1946). *Page 4 
With regard to quieting title to land generally, as stated in Op. Att'y Gen. 2005-135, under current law, "`. . . a prima facie case to quiet title requires a showing that the plaintiff has legal title to the property and is in possession.' Koonce v. Mitchell, 341 Ark. 716, 718,19 S.W.3d 603 (2000) (emphasis added), citing Gingles v. Rogers,206 Ark. 915, 175 S.W.2d 192 (1943). See also, Potlatch Corp. v.Triplett, 70 Ark. App. 205, 16 S.W.3d 279 (2000)." Id. at 5.
To quiet title to mineral interests under current law, however, the plaintiff must show either some legal title or color of title in thesevered mineral estate (through deeds, reservations or grants), or title to the minerals through adverse possession. See Op. Att'y Gen. 2005-135
and Farnsworth v. Barret, 146 Ky. 556, 142 S.W. 1049 (1912). Title to, or adverse possession of the surface estate will not suffice to show adverse possession of the minerals. Id. Actual production of the minerals by opening mines and operating the same for the statutory period is required to adversely possess mineral rights. Peterson v.Simpson, 286 Ark. 177, 690 S.W.2d 720 (1985) and Claybrooke v.Barnes, 180 Ark. 678, 22 S.W.2d 390 (1929). See also, Taylor v.Scott, 285 Ark. 102, 685 S.W.2d 160 (1985). "The reason frequently given for this strict attitude of protecting the owner of a severed mineral interest is that the mineral owner, having no legally protected interest in the surface apart from those rights incident to the removal of the minerals, can justifiably ignore any occupation of the surface since no cause of action can accrue to him by reason of another's surface occupancy." Silver, Mines and Minerals, Oil and Gas, What ConstitutesAdverse Possession of Severed Mineral Interest by SurfacePossessor, 17 Ala. L. Rev. 126 at 129, citing 1 Williams Meyers, Oil Gas Law, § 224.1 (1962 and Kuntz Oil Gas § 10.4 (1962). Finally, under current law, payment of taxes on land by the surface owner does not constitute possession of the minerals because they are subject to separate assessment. Jones v. Brown, 211 Ark. 164, 199 S.W.2d 973 (1947) (interpreting what is now A.C.A. § 18-11-102).
In light of this backdrop, it is unclear to me whether House Bill 2741's requirement that a petitioner show a "prima facie right and title to the severed mineral estate" requires him to assert one of the grounds listed above as evidencing his right to the minerals (either some type of record title or color of title to the severed mineral estate, or title by adverse possession of the minerals by production). If it does not require such proof, this language would appear to be meaningless and I cannot determine its effect. It is an established rule of statutory construction that *Page 5 
language in a statute will not be given a construction that renders it mere surplusage. See, e.g., Stephens v. Arkansas School for theBlind, 341 Ark. 939, 20 S.W.3d 397 (2000); Central Southern Companies,Inc. v. Weiss, 339 Ark. 76, 3 S.W.3d 294 (1999); and Ford v. Keith,338 Ark. 487, 996 S.W.2d 20 (1999). Thus construed, however, the language of House Bill 2741 does not represent any significant change to the existing law. See Op. Att'y Gen. 2005-135 (discussing the requirements for filing a quiet title action as to severed minerals). I thus am uncertain as to the intention of the bill in this regard.
It may be that this subsection of House Bill 2741 is intended to allow a surface estate owner to prove a "prima facie right and title" to the severed mineral estate through proof of the immediately preceding requirements of ownership and payment of taxes on the surface estate alone. If so, in my opinion the bill is unconstitutional.
It has been stated that "[l]egislation dealing with severed minerals is variously found under the Title of `Dormant Mineral Acts' or `Mineral Lapse Acts' and sometimes `Marketable Title Acts.'" Shirley Norwood Jones, Constitutional and Practical Problems in Legislation to TerminateNon-Productive Mineral Interests, 3 Miss C. L. Rev. 175 (1983). "Although dormant mineral acts differ in their approaches, they are of two basic kinds. The first kind requires mineral estate owners to register their interests; failure to register alone causes the mineral estate to merge into the surface estate. The second kind requires mineral estate owners to register their interest or put their interest to a specific use; the combination of non-registration and non-use causes the mineral estate to merge into the surface estate." Comment,Dormant Mineral Acts and Texaco, Inc. v. Short: Undermining the TakingClause, 32 Am. U. L. Rev. 157, 161-62. (Fall 1982). See also, TexacoInc. v. Short, 454 U.S. 516 (1982) (upholding Indiana Dormant Minerals "lapse" Act against a constitutional challenge).
The U.S. Supreme Court case of Texaco, Inc. v. Short, referred to above, involved an Indiana statute that provided that severed mineral interests "not in use" for a period of twenty years automatically lapsed and reverted to the current surface owner, unless the mineral owner filed a statement of claim in the local county recorder's office. That statute contained a two-year grace period from the effective date of the act during which owners of unused mineral interests could file a claim with the county recorder. The minerals were not deemed unused if there was any actual or attempted production of minerals, any payment of rents or royalties, or *Page 6 
any payment of taxes on the mineral estate during the twenty-year period. The statute did not require any specific notice to be given to the mineral owner of the new law or before the twenty-year period was about to expire. The statute was challenged as being unconstitutional because, among other things, it: 1) allegedly effected a "taking" of private property for public use without just compensation under the "takings clause" of the Fifth Amendment (made applicable to the states through the Fourteenth Amendment); and 2) failed to give notice of the law, or prior notice of an individual lapse, allegedly depriving the mineral owners of property without due process of law under the Fourteenth Amendment.
The United States Supreme Court rejected these assertions and upheld the constitutionality of the Indiana statute. The Court first concluded that the statute was a valid exercise of the police power because it was similar to a typical "recording" statute. The Court recounted a history of precedent upholding the power of a state to "condition the retention of a property right upon the performance of an act within a limited period of time." Id. at 529. The Court also found that the statute did not amount to an unconstitutional "taking" of property in violation of the Fourteenth Amendment. The Court found no "taking," concluding under the statute that it is the owner's own failure to make any use of the property — no t the action of the State, that causes the lapse of the property right. The Court stated that it had "never required the State to compensate the owner for the consequences of his own neglect."Id. at 530. The Court also rejected the Due Process allegations, noting that "it is well-established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property" and that the two-year grace period, which allowed the property owners to familiarize themselves with the law, was not constitutionally inadequate. The Court also stressed the difference, from a due process "notice" perspective, between a "self-executing" law such as the Indiana statute and a subsequent judicial determination that a particular lapse did in fact occur. Notice of the passage of a generally applicable self-executing law is not required, but due process notice requirements attach to subsequent judicial determinations. The Court stated:
 It is undisputed that, before judgment could be entered in a quiet title action that would determine conclusively that a mineral interest has reverted to the surface owner, the full procedural protections of the Due Process Clause — including notice reasonably *Page 7 
calculated to reach all interested parties and a prior opportunity to be heard — must be provided. . . .
 * * * [B]ut it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights.
Id. at 534 and 535, distinguishing the decision in Mullane v. CentralHanover Bank Trust Co., 339 U.S. 306 (1950) as applying only to "adjudications" that are to be "accorded finality" and not to "a general rule of law governing the abandonment of property." See also, UnitedStates v. Locke, 471 U.S. 84 (1985) (federal statute requiring holders of unpatented mining claims to file yearly paperwork with Bureau of Land Management or face forfeiture of claims was not unconstitutional).
House Bill 2741 is quite dissimilar to the Indiana statute upheld inShort. Because of the interpretation issues discussed above, I have some difficulty in determining its proper characterization. Unlike the Indiana statute in Short, it is not a generally applicable "self-executing" law. It requires the filing of a quiet title action in each case to determine the ownership of minerals. It does not condition the retention of severed mineral interests on the performance of an act by the mineral owner. It provides no "grace period" during which mineral interest owners may act to protect their rights, or any statutory method to protect those rights. It would apparently allow a merger of the severed mineral estate to the surface estate based upon ownership and payment of taxes for seven years on the surface estate alone and the mere inability to locate the record owner or any other adverse owner (assuming the second interpretation discussed above is correct).
If so, it is difficult to characterize it as a "lapse statute" in the absence of an act or requirement without which the interest will "lapse." Neither does it require the surface owner to assert any dominion over the separate, severed mineral estate so as to render the bill an adverse possession statute. The difference between lapse statutes and adverse possession statutes was discussed in Mixon v. OneNewco, Inc., 863 F.2d 846 (11[th] Cir. 1989): "While the typical adverse possession statute focuses on the steps the adverse possessor must take in order to quiet title against the true owner, a "lapse" or "limitations" statute emphasizes what the true owner (here, *Page 8 
the owner of the mineral rights) has done or failed to do so as to preclude him from asserting or retaining title." Id. at 848. House Bill 2741, if construed as suggested above, would require neither any particular adverse action by the surface owner against the severed mineral estate, nor any true non-action on the part of the severed mineral owner. Although the title of House Bill 2741 refers to the ability to quiet title in "abandoned" mineral interests, it does not set out any standard by which a mineral interest may be deemed "abandoned," or otherwise use the word "abandoned" in the text of the bill. It is impossible to state in this regard what the mineral interest owner has failed to do to create an abandonment and a cause of action against him. His only transgression is that he cannot be located after a reasonable effort by a petitioner who has owned and paid taxes on the surface estate for seven years. A mineral owner who is not located by the petitioner is left without any reasonable indication as to what he must do to protect his interest. He has no right to interfere with the surface owner's possession of the surface and he is afforded no statutory mechanism to protect his claim. If the bill is construed as allowing a surface owner to make his case without proof of some claim of title to the severed mineral estate, or without proof of any inaction on the part of the un-located mineral owner, in my opinion these facts are problematic under "police power" considerations and under the due process considerations discussed in Texaco, Inc. v. Short. I have found no case law discussing a statutory scheme similar to House Bill 2741. If interpreted as suggested above, however, in my opinion the absence of any affirmative acts of adverse possession of the minerals, or of any "neglect" or failure to act on the part of the mineral interest owner leaves House Bill 2741 vulnerable to a "takings" challenge, or to a substantive due process challenge. See Texaco, Inc. v. Short, supra andcf., e.g., Rocket Oil and Gas v. Donabar, 127 P.3d 625, Ct. Civ. App. Okla. (2005) (Oklahoma Marketable Title Act upheld where it affords severed mineral owners a method for preserving their interests and is based upon the failure of the mineral owner to protect that interest);West v. Wilson, 1995 WL 96796 (Tenn.Ct.App.) (Tennessee mineral lapse statute upheld where it is self-executing and provides a grace period for mineral owners to file a claim to protect their interests); andVan Slooten v. Larsen, 86 Mich. App. 437, 272 N.W.2d 675 (1978) (Michigan Dormant Minerals Act upheld based upon abandonment by failure of mineral interest owner to perform minimal acts required by the statute in a twenty-year period).
In addition, in my opinion, other portions of the bill are constitutionally deficient with regard to the notice required. As stated above, in a quiet title action such as *Page 9 
authorized by House Bill 2741, "the full procedural protections of the Due Process Clause — including notice reasonably calculated to reach all interested parties and a prior opportunity to be heard — must be provided. . . ." Texaco, Inc. v. Short, supra at 534. Thus where state action is present under a particular statutory scheme, as through the actions of a circuit court, the Due Process Clause requires actual, rather than constructive notice, to known or "readily ascertainable" interested parties. The evolution of this principle can be traced through the following cases: Mullane v. Central Hanover Trust Companysupra (mere constructive notice by publication to "known" beneficiaries of common trust fund whose whereabouts are also "known" violated the Fourteenth Amendment); Mennonite Board of Missions v. Adams,462 U.S. 791 (1983) (state tax sale procedure where record owner received actual notice by certified mail, but mortgagee identified in public record received only constructive notice by publication violated Fourteenth Amendment); Tulsa Professional Collection Services, Inc. v. Pope,485 U.S. 478 (1988) (provision of state probate code providing for mere publication notice to creditors of estate violated due process if creditor's identity was known or "reasonably ascertainable"); andJones v. Flowers, 547 U.S. 220 (2006) (where certified mail notice of tax sale to property owner is returned unclaimed, the state must take additional steps to provide notice under due process clause).
In this regard, House Bill 2741 states that the petition it authorizes must "summon all persons or entities that claim any interest in the severed mineral estate to appear in the circuit court. . . ." Proposed A.C.A. § 18-60-1002(a)(5). It is unclear how such persons will be determined. House Bill 2741 also states that "[i]f the petitionerhas knowledge of any other person who has, or claims to have, interest in the severed mineral estate, the petition . . . shall state this fact, and the named person or entity shall be summoned as defendants in the case." Proposed A.C.A. § 18-60-1002(b)(1). This section therefore refers only to known parties. The bill also refers to the petitioner making a "reasonable effort to discover the owner of record" (§ 18-60-1002(b)(2)), and for summoning the record owner (§ 18-60-1003(c)), but not "reasonably ascertainable" creditors or other "reasonably ascertainable" interested parties. Publication notice is provided for by Proposed A.C.A. § 18-60-1003, presumably for all interested persons. In my opinion this statutory scheme is not entirely consistent with the United States Supreme Court precedent recounted above, which requires actual notice not only to known parties, but to "reasonably ascertainable" interested parties as well. See also, Gilbreath v. UnionBank, 309 Ark. 360, 830 S.W.2d 854 (1992); Hurst v. Rice, 278 Ark. 94, *Page 10 643 S.W.2d 563 (1982); and Welch v. Burton, 221 Ark. 197, 252 S.W.2d 411
(1952).
Evidence of the insufficiency of House Bill 2741 in this regard may be drawn from a recent amendment of A.C.A. § 18-60-502, the previous version of which appears to have formed the basis for House Bill 2741. In 2007, after the United States Supreme Court decision in the case ofJones v. Flowers, supra (which involved an Arkansas tax sale), the General Assembly added some affirmative duties in connection with notice in a quiet title action:
 (b)(1) The petitioner shall initiate a search of the following records in order to identify persons entitled to notice and shall provide notice pursuant to subdivision (b)(2) of this section:
 (A) Land title records in the office of the county recorder;
 (B) Tax records in the office of the county collector;
 (C) Tax records in the office of the county treasurer;
 (D) Tax records in the office of the county assessor;
 (E) For an individual, records of the probate court for the county in which the property is located;
 (F) For an individual, voter registration records maintained by the Arkansas Secretary of State;
 (G) For a partnership, partnership records filed with the county clerk; and
 (H) For a business entity other than a partnership, business entity records filed with the Arkansas Secretary of State.
 (2)(A) Petitioner shall send notice by certified mail to the last known address in duplicate, with one copy addressed by name to the person entitled to notice and the other copy addressed to *Page 11 
"occupant", and if the certified mail is returned undelivered, the petitioner shall send a second notice by regular mail.
 (B) Petitioner shall post a notice of the pending quiet title action conspicuously on the property.
In my opinion, the current notification procedures in House Bill 2741, which provide for only constructive notice by publication to creditors, lienholders, or interested parties other than the record owner, are constitutionally deficient. This is particularly true where Proposed A.C.A. § 18-60-1002(b)(3) authorizes the circuit court to "find apparent liens on the severed mineral estate to be barred by the laws of limitations or laches" and to "decree the cancellation of the liens of record."[1]
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] I note that this section alone would likely not be interpreted as authorizing the circuit court to bar tax liens on the mineral interests.See, e.g., Jensen v. Fordyce Bath House, 209 Ark. 478, 190 S.W.2d 977
(1945) (concluding that absent a specific statute in this regard, a "general statute of limitations has no application and may not be pleaded in defense of proceedings to collect any part of the delinquent taxes involved in this suit").